# EXHIBIT 10

EXHIBIT 10
Page 108

1 │ Honorable Richard A. Stone (Ret.)
    │ BENCHMARK RESOLUTION GROUP
2 │ 633 West 5th Street, Suite 1000
    │ Los Angeles, California 90071
3 │ (213) 622-1002 PH
    │ Arbitrator
4
5
6 │ **BENCHMARK RESOLUTION GROUP**

7 │ **IN RE THE MATTER OF THE ARBITRATION BETWEEN**

8

9 │ MARC I. WILLICK,                                   )   ADRS Case. No. 15-6722-RAS
                                                              )
10 │                    Plaintiff/ Claimant,         )   **[TENTATIVE] ORDER RE:**
                                                              )   **PLAINTIFF'S MOTION FOR**
11 │     vs.                                               )   **TERMINATING AND MONETARY**
                                                              )   **SANCTIONS**
12 │ NAPOLI BERN RIPKA &                         )
13 │ ASSOCIATES, LLP et. al.,                     )   DATE: May 1, 2018
                                                              )   TIME: 8:00 am
14 │                    Defendants/Respondents  )   PLACE:  Benchmark Resolution Group
15 │                                                         )
                                                              )
16 │                                                         )
                                                              )
17 │                                                         )
                                                              )
18 │                                                         )
                                                              )
19 │ _____)

20 │      Plaintiff's/Claimant's  motion  for  terminating  and  monetary  sanctions  against

21 │ defendant/respondent Napoli Bern Ripka & Associates, LLP came on for hearing before the

22 │ Arbitrator, Hon. Richard A. Stone (Ret.), on May 1, 2018.  Having considered the parties'

23 │ written briefs on the motion, the Arbitrator now issues the following tentative order granting the

24 │ motion in full:

25
26
27
28
29

EXHIBIT 10
Page 109

## Background

This breach of contract action arises out of a dispute between a California attorney ("Plaintiff" or "Willick") and the New York law firm Napoli Bern Ripka & Associates ("NBRA" or "Napoli Bern") regarding nonpayment of fees. Plaintiff specializes in representing individuals suffering from asbestos-related illnesses, including mesothelioma. Plaintiff's law office agreed to act as local counsel for NBRA with respect to certain asbestos-related cases in exchange for payment of fees, pursuant to two contracts: a "Co-Counsel Agreement for California Personal Injury Claims" dated March 17, 2011, and an employment agreement dated May 20, 2011.

Less than two years into the relationship, Plaintiff became concerned with numerous facets thereof, including whether NBRA was paying all referral fees due to him. The relationship disintegrated. On December 12, 2014 (i.e., over 3 years and four months ago), Plaintiff filed a complaint in the Superior Court of California, Los Angeles, Case No. BC566742, against NBRA, Napoli Bern Ripka Shkolnik & Associates, LLP, Napoli Bern Ripka Shkolnik, LLP, Napoli Bern Ripka, LLP, and Napoli Kaiser Bern, LLP (collectively, "Entity Defendants"); and Marc J. Bern ("Bern") and Paul J. Napoli ("Napoli") (collectively, "Individual Defendants"). The Complaint alleged five causes of action against all of the defendants: (1) accounting (re: fees received on cases referred by Plaintiff or his referral sources); (2) breach of contract; (3) fraud; (4) violation of Business & Professions Code § 17200; and (5) negligent misrepresentation.

On January 28, 2015, the Entity Defendants removed the case to federal court. The Entity Defendants subsequently filed a motion to compel arbitration of the matter pursuant to the May 2011 Contract, which motion the District Court granted on August 20, 2015. In granting the motion, the District Court relied, in part, on the defendants' representation that they would pay their portion of the costs of arbitration.

On September 15, 2015, the parties selected the Arbitrator. The arbitration was initially scheduled to take place in two phases: liability and damages (if Plaintiff prevailed on liability). The hearing in Phase 1 was originally set for January 24-25, 2017, and the hearing in Phase 2

EXHIBIT 10
Page 110

was set for March 14-15, 2017. However, the hearing dates were vacated because the defendants did not comply with their discovery obligations.

In November 2017, the Arbitrator issued two tentative rulings in favor of Plaintiff on his first cause of action for an accounting, regarding the scope of the accounting and the responsibility for paying the costs of same. On January 27, 2018, the Arbitrator issued the final ruling on the matter, captioned, "Interim Award Re Accounting" ("the Interim Award").

In the Interim Award (Motion, Ex. G), the Arbitrator ruled in favor of Plaintiff on his first cause of action for an accounting (against NBRA only) and ordered an accounting.

In finding that an accounting was appropriate, the Arbitrator stated, *inter alia*, that "it is clear, based on the evidence submitted by Mary Keyes, one of Willick's referral sources, that Willick may be entitled to substantial compensation." (Interim Award, at 5:23-25.)[1]

The scope of the accounting ordered was quite broad: "The accounting must identify all cases referred by Willick or Willick's Referral Sources to [NBRA] or any law firm with which Paul Napoli or Marc Bern have been affiliated, and quantify the fees received on such cases. The accounting must also identify all cases for which Willick performed work as local counsel between March 7, 2011 and May 20, 2011, along with all Assigned Cases that Willick worked on while employed by [NBRA], and include the information identified in Section I [requiring extensive information as to each case]."

The Interim Award appointed Bjorn L. Malmlund of Ernst & Young LLP ("the Accountant" or "E&Y") -- *whom NBRA itself had, in October 2017, proposed to head up the accounting* -- to conduct the accounting. The Interim Award also directed NBRA to bear the costs of the accounting, including a $100,000.00 retainer to E&Y.

The Arbitrator concluded that it was appropriate to order NBRA to bear the costs of the accounting primarily because:

> [T]he equities weigh against placing this burden on Willick. First, Defendant

---

[1] According to a list provided by Plaintiff's key referral source (Mary Keyes) pursuant to an order issued by the United States District Court, Plaintiff referred at least *2500* cases to the defendants in this action. Defendants claimed in discovery that he referred *4* cases. This is discussed further in footnote 2, *post*.

EXHIBIT 10
Page 111

Napoli Bern Ripka & Associates, LLP appears to have breached its obligations under the May Contract to pay Willick for cases on which he worked. Second, Defendant Napoli Bern Ripka & Associates, LLP appears to have breached its obligation under the May Contract to pay Willick the portion of fees they received on cases accepted from his Referral Sources. Third, Defendant Napoli Bern Ripka & Associates, LLP have *never provided Willick with an accounting even though it promised him that it would do so.* Fourth, Defendant Napoli Bern Ripka & Associates, LLP *breached its discovery obligations and prevented Willick from obtaining the documents and information necessary to perform an accounting on his own.* Fifth, Defendant Napoli Bern Ripka & Associates, LLP *failed to fulfill its promises during discovery to Willick's detriment.* And sixth, *material information provided during discovery relating to cases referred by Willick's referral sources proved to be false.*  Interim Award, at 5:26-6:9 (emphases added).[2]

By late March 2018, NBRA still had failed to pay the $100,000.00 retainer (or even sign a retainer agreement with E&Y).  Accordingly, Plaintiff brought this motion seeking terminating and monetary sanctions for failure to comply with the Interim Award.  NBRA filed opposition papers.  Plaintiff filed reply papers.

## The Competing Contentions of Plaintiff and Defendant

---

[2]  In his October 7, 2017 order denying Defendants' motion to dismiss Plaintiff's accounting claim, the Arbitrator stated: "While this case does not involve royalties, the amounts allegedly due and owing to Willick are similar in that he claims he is owed a percentage of fees for cases he brought in to the firm.  This could feasibly be accomplished through discovery. However, for the reasons set forth in Willick's opposition, *discovery has been woefully insufficient in this regard. Napoli Bern only identified four individuals as having been referred by Mary Keyes, one of Mr. Willick's referral sources. According to Willick, documentation provided by Ms. Keyes shows that 2,520 cases were referred to Napoli Bern, not 4... The arbitrator participated in a number of telephonic conferences with counsel seeking to assist the parties to produce the requisite discovery consistent with Respondents' legal obligations. When the arbitrator scrutinizes the discovery responses of the individual and entity Respondents, one cannot help but conclude that they have chosen to prevent Willick from obtaining appropriate discovery to establish his claims*."  (Ruling re Motion to Dismiss Accounting Claim, at 7:24-8:10) (emphases added).

EXHIBIT 10
Page 112

Plaintiff asserts that the Interim Award is equal to a discovery order, and that terminating and monetary sanctions against NBRA are merited due to its violation of that order. As Plaintiff puts it: "[NBRA] was ordered to pay for the cost of an accounting. It has failed to do so. As a result, the accounting has not been conducted or even commenced; this matter — which was been pending for over three years — has been delayed once again, thus jeopardizing the efficacy of any further relief that may be awarded to Plaintiff...; and Willick has incurred substantial additional costs. [NBRA's] conduct is inexcusable and outrageous, and sanctionable. Both terminating sanctions and monetary sanctions are warranted and, indeed, required. At this point, anything less would be too little, too late. [NBRA]'s Answer to Willick's Complaint should be stricken; a default award should be issued; a 'prove up' hearing should be scheduled; and, following the hearing, a final award should be issued on Willick's claims against [NBRA]." (Motion, at 3:3-13.)

NBRA points out the highly disfavored nature of terminating sanctions and asserts that same are not appropriately imposed here because it has tried, in good faith, to move forward with the accounting (including the payment of the $100,000.00 retainer to E&Y). "NBR[A] has made a reasonable and good faith effort to comply with the Interim Award given that the Interim Award was not finalized until January 27, 2018, the Engagement Agreement with [E&Y] has yet to be finalized, and the Referee [in New York] has yet to approve the $100,000.00 retainer fee for [E&Y]. On March 27, 2018, NBR[A] filed suit against its insurer to seek to compel payment of the retainer as a covered item under the insurance policy. The record before the Arbitrator supports a decision denying the subject motion." (Opposition, at 2:10-17.)

"Given the complex nature of this case, NBR[A] was required to coordinate with its insurance carrier, the Referee, the Accountant [E&Y], and other parties in order to comply with the Interim Award, which necessarily takes time. As demonstrated in the various emails and letters sent by and on behalf of NBR[A], it is evident that NBR[A] made a good faith effort to fulfill its obligations under the Interim Award. Accordingly, Plaintiff's motion should be denied." (Opposition, at 6:15-21.)

EXHIBIT 10
Page 113

On reply, Plaintiff cogently addresses NBRA's arguments on a point-by-point basis. The Referee will not summarize those arguments here, because they will be discussed (and even quoted) at length below.

### Analysis

Code of Civil Procedure Section 2023.030 authorizes a trial court to impose monetary sanctions, issue sanctions, evidence sanctions, or terminating sanctions against 'anyone engaging in conduct that is a misuse of the discovery process.'" (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 991.)[3]  American Arbitration Association Rule R-58, which is applicable to this dispute in light of the parties' arbitration agreement specifically referencing same,  provides: "The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with these rules or an order of the arbitrator."[4]

NBRA does not dispute that the Interim Order is in the nature of a discovery order. *Nor could it reasonably do so*.  As is aptly stated in the moving brief: "The purpose of the Interim Award was to obtain the information needed to quantify [NBRA's] liability in this case.  It was intended to serve the same function as an order compelling discovery ... .  Indeed, it was, in large part, Defendants' failure to provide full and accurate responses to discovery requests concerning

---

[3]  The Arbitrator notes that in October 2017, he denied NBRA's motion for terminating sanctions brought under this very statute.

[4]  Further, Code of Civil Procedure section 1283.05(b) provides that arbitrators "have power, in addition to the power of determining the merits of the arbitration, to enforce the rights, remedies, procedures, duties, liabilities, and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions, and penalties as can be or may be imposed in like circumstances in a civil action by a superior court of this state under the provisions of this code, except the power to order the arrest or imprisonment of a person." (See, *Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 535 ["[s]ection 1283.05's subdivision (b) grants arbitrators the power to enforce discovery through sanctions," and "[t]hus, in an arbitration proceeding the arbitrator's power to enforce discovery resembles that of a judge in a civil action in superior court"]; *Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1091 [section 1283.05 grants power to an arbitrator to impose discovery sanctions].)

EXHIBIT 10
Page 114

[referred cases] that led the Arbitrator to his decision on Willick's cause of action for an accounting." (Motion, at 9:2-7.)[5]

"The court may impose a terminating sanction by ... [¶] ... [¶] ... rendering a judgment of default against th[e offending] party." (CCP 2023.030(d)(4).) A court is afforded broad discretion in selecting discovery sanctions, "subject to reversal only for abuse." (*Doppes*, *supra*, at 992; see also, *R.S. Creative, Inc. v. Creative Cotton Ltd.* (1999) 75 Cal.App.4th 486, 496.)

Three facts are prerequisite to imposition of "doomsday" sanctions: (1) there must be a failure to comply; (2) the failure must be willful; and (3) there must be a prior court order compelling compliance with discovery that has been disobeyed. (*Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545; *Ruvalcaba v. Government Employees Ins. Co.* (1990) 222 Cal.App.3d 1579, 1580-1581.)[6]

Even if those three facts are established, terminating sanctions are disfavored and need not be imposed: "Discovery sanctions are intended to remedy discovery abuse, not to punish the offending party. Accordingly, sanctions should be tailored to serve that remedial purpose, should not put the moving party in a better position than he would otherwise have been had he obtained the requested discovery, and should be proportionate to the offending party's misconduct." (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1223. See also, e.g., *Rail Services of America v. State Comp. Ins. Fund* (2003) 110 Cal.App.4th 323, 331–332 ["the trial court may impose sanctions that are suitable and necessary to enable the party seeking

---

[5] *Cf.*, *In re Marriage of Kasteiner*, 2015 WL 4601122, *5 ("The appointment of the accounting expert to obtain the information and analysis necessary to understand the nature, value and cash flow of Paul's business to make an appropriate support order *was in the nature of a discovery order*. Therefore, the court had authority under both Code of Civil Procedure section 2023.030 and its inherent judicial powers to impose terminating sanctions for failure to comply with court orders and for misuse of the discovery process") (emphasis added).

[6] Willfulness in failing to comply with discovery obligations does not require wrongful intentions; a simple lack of diligence may be deemed willful where the party knew he had an obligation, had the ability to comply, and failed to do so. (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 787.) The party with the obligation to respond to discovery – i.e., NBRA - bears the burden of showing that the failure to respond or comply was not willful. (*Cornwall v. Santa Monica Dairy Co.* (1977) 66 Cal.App.3d 250, 252-253.)

EXHIBIT 10
Page 115

discovery to obtain the objects of the discovery he [or she] seeks but the court may not impose sanctions which are designed not to accomplish the objects of the discovery but to impose punishment" (internal quotations and citations omitted)]; *In re Marriage of Economou* (1990) 224 Cal.App.3d 1466, 1476 ["Discovery sanctions cannot be imposed to punish the offending party or to bestow an unwarranted 'windfall' on the adversary"]; *Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 793 [the sanction should be "appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery"].)[7]

A terminating sanction is a drastic measure that denies a party the right to a trial on the merits. Accordingly, consistent with the authorities discussed above, our courts have limited its use to only the rarest and most extreme cases of litigation misconduct when no lesser sanction can preserve the fairness of the trial and restore balance to the adversary system. (*Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 916–917; see also, *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 279 ["A decision to order terminating sanctions should not be made lightly"]; *Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 761, 764 [establishing a trial court's inherent power to dismiss an action for discovery abuse].)

The Arbitrator concludes that, unfortunately, this is one of those rare and extreme cases. In this regard, none of the four excuses offered by NBRA hold water; none are *legitimate* excuses. Indeed, a close look at the proffered excuses only reveals NBRA's continuing, egregious delay and misconduct.

The excuse that the Interim Award was not finalized until January 27, 2018:

NBRA asserts that although the Arbitrator issued his tentative ruling in November 2017, the Arbitrator did not finalize it until January 27, 2018 when he issued the formal Interim Award. This fact actually works *against* NBRA. As Plaintiff states in his reply brief:

---

[7] NBRA argues: "If Plaintiff's motion were granted and termination sanctions issued, this would undoubtedly place Plaintiff in a better position than he would be in had the alleged non-compliance with the Interim Award not taken place, as argued by Plaintiff." (Opposition, at 8:25-28.) However, NBRA provides *no explanation* as to why that is the case.

EXHIBIT 10
Page 116

[NBRA] admits its insurance company denied coverage for the $100,000 retainer for the Accountant on November 27, 2017 more than two months before [NBRA] informed the Arbitrator and Willick that the insurance company would not pay…. During this time, there were multiple conferences with the Arbitrator related to finalizing the Interim Award and beginning the accounting, but *at no point was the Arbitrator or Willick informed that the insurance company had denied coverage, or even that any decision that the insurer might make might have an impact on compliance with the Interim Award*. [Para.] *Although [NBRA] knew since November 27, 2017, that the insurance company had denied coverage, they did nothing to attempt to secure other means of payment until February 28, 2018, more than three months after the insurance company denied coverage and nearly a month beyond the date that [NBRA] was supposed to inform the parties and the Arbitrator as to whether it would pay for the Accounting February 5, 2018*.

Reply, at 4:4-16 (emphases added).

> The excuse that the Engagement Agreement with E&Y has yet to be finalized:

Per NBRA, it has been "work[ing] with the Accountant to revise the Engagement Agreement as needed, which has yet to be finalized." It asserts that "[t]he dispute over th[e Enagagement Agreement's Personal Data] provision (and potentially other provisions) must first be resolved before the Engagement Letter can be finalized." (Opp. at 5:3-4.)

The Arbitrator has carefully reviewed NBRA's proposed revisions to E&Y's engagement agreement. The *many* reasons why this excuse fails are tackled handily at 5:13-7:9 of the reply brief and will not be repeated at length here. Suffice it to say that the Arbitrator wholeheartedly agrees with Plaintiff's observations that: (1) *nothing* in the Interim Award excuses NBRA from withholding the retainer while it quibbles with E&Y regarding the terms of the engagement letter; (2) any issues regarding the conditions under which E&Y would be willing to serve as the accountant in this case should have been addressed and resolved prior to that firm being proposed as a candidate by NBRA itself, and certainly prior to the hearing when

EXHIBIT 10
Page 117

the Arbitrator selected E&Y; and (3) NBRA's disputes with E&Y over the terms of the agreement - including *but not limited to* its requests that E&Y dispense with its arbitration provision, that E&Y dispense with certain exoneration and liability limitation provisions, and that E&Y dispense with its Personal Data provision - are "contrived" disputes inappropriately created by NBRA to (among other things) delay the accounting.

<u>The excuse that the Referee in New York has yet to approve the $100,000.00 retainer fee for E&Y</u>:

The facts pertinent to this excuse, as set forth in the opposition brief, are as follows: (1) "Mark C. Zauderer (the 'Referee') was appointed as the referee in the action Napoli v. Bern, Index No. 159576/2014 and is empowered to hear and determine any and all issues, and to perform any and all acts in this action with all the powers of the Supreme Court of the State of New York"; (2) "On February 28, 2018, Counsel for Entity Defendants wrote to the Referee requesting authorization for the $100,000.00 retainer for Ernst & Young to conduct the accounting"; and (3) "On March 14, 2018, the Referee responded stating that he is awaiting the advice of Mr. Napoli and Mr. Bern on how to proceed." (Opp., at 5:9-21.)

As stated in the reply brief, Napoli Bern's assertion that it should be excused for not complying with the Interim Award because the Referee hasn't authorized payment lacks merit:

> *First*, Mr. Zauderer hasn't authorized payment because "he is waiting the advice of Mr. Napoli and Mr. Bern how to proceed." ... However, there is no indication that Mr. Zauderer doesn't have the funds. Indeed, Napoli Bern has not provided any information whatsoever concerning its financial condition or the results of its operations.... In fact, it is telling that neither Napoli or Bern, nor Mr. Zauderer, nor anyone but one of Napoli Bern's new attorneys in this case (who does not purport to have any personal knowledge regarding Napoli Bern's finances, the coverage issues, or the proceedings in Napoli v. Bern) has submitted a declaration or other evidence in opposition to this motion. [Para.] *Second*, Mr. Zauderer has been waiting for the authorization since February 28, 2018, almost two months ago. Why hasn't the authorization been given? No explanation is provided in the Opposition.

EXHIBIT 10
Page 118

1  Reply, at 4:21-5:5.

2

3      <u>The excuse that the NBRA's insurer has denied payment of the retainer as a covered</u>

4  <u>item under the insurance policy (and NBRA's filing of a coverage suit):</u>

5      NBRA, pointing out that in late March 2018 it "filed suit against its insurer, Evanston

6  Insurance Company, seeking court intervention to compel payment of the $100,000.00 retainer"

7  (and sought authorization from the New York Referee), argues that it "has made strides to

8  comply with the Interim Award."  (Opp., at 7:15-16.)

9      However, as Plaintiff correctly counters: "Napoli Bern never asked the Arbitrator to

10  make the Interim Award relating to the cost of the accounting conditioned on or subject to the

11  insurance company making the payment.  If they intended to delay the accounting process until

12  they received a payment from the insurance company, they should have said something a long

13  time ago…. [Para.]  The bottom line is that the Interim Award requires Napoli Bern - not the

14  insurer - to pay for the cost of the accounting, including the $100,000 retainer required by the

15  accountant that they proposed.  The Award does not permit Napoli Bern to delay payment or

16  compliance with the Award pending a resolution of what will likely be a lengthy case regarding

17  coverage for Willick's claims."  (Reply, at 3:15-27.)

18

19      Based on the foregoing, as well as the prior history of this action (with which the

20  Arbitrator is quite familiar, and part of which is summarized in the "Background" section of this

21  order, *ante*), the Arbitrator finds that NBRA's assertion that it sought to comply with the Interim

22  Order "in good faith" lacks credibility.  To put it another way: the Arbitrator concludes that

23  NBRA's failure to comply with the Interim Order was *willful*.

24      Numerous cases stand for the proposition that terminating sanctions are appropriate in

25  egregious instances of discovery misconduct.  Indeed, "where a violation is willful, preceded by

26  a history of abuse, and the evidence shows that less severe sanctions would not produce

27  compliance with the discovery rules, the trial court is justified in imposing the ultimate

28  sanction." (*Mileikowsky*, *supra*, 128 Cal.App.4th at 279.)

29

EXHIBIT 10
Page 119

One example is *Hartbrodt v. Burke* (1996) 42 Cal.App.4th 168.  In that case, the plaintiff commenced an action for breach of contract and tort seeking return of a $2,000,000 capital investment in a company that never got off the ground.  The defendant served document production requests seeking a tape made of a conversation between the parties relevant to the issues of the complaint.  The defendant also alleged the plaintiff had played the tape for him and claimed he would make trouble for the defendant unless he received $2,000,000.  The plaintiff responded that the tape was privileged from discovery by the privilege against self-incrimination, as the plaintiff was under investigation by the federal government for mail fraud.  (*Id.* at 170-171.)  A discovery referee concluded the tape contained relevant material and ordered a redacted version made available for inspection, and the referee's conclusions were upheld by the trial court.  (*Id.* at 171.) The trial court ordered the tape produced within 30 days; the plaintiff failed to comply. Thereafter, the trial court granted the defendant's motion for a terminating sanction and dismissed the action.  (*Id.* at 171-172.)  *Hartbrodt* found no abuse of discretion based upon the plaintiff's willful obstruction of discovery in his failure to produce the tape after both the referee and trial court ordered its production.  (*Id.* at 175.)

Similarly, in *Collisson & Kaplan v. Hartunian* (1994) 21 Cal.App.4th 1611, the trial court imposed terminating sanctions after the defendants failed to comply with a single court order to produce discovery.  After failing to receive appropriate responses, or timely responses, to numerous discovery requests, the plaintiff sent the defendants letters requesting compliance with the discovery, to which the defendants failed to respond.  The trial court granted the plaintiff's motions to compel and ordered the defendants to respond to discovery. The defendants failed to comply with these orders, and the plaintiff filed a motion to strike the defendants' answer.  (*Id.* at 1614-1615.)  After the motion was granted, the defendants filed a motion for reconsideration and responded to discovery.  (*Id.*)  The *Collisson & Kaplan* court rejected the defendants' argument that "that since this was their 'first effort' at drafting responses, the trial court should not have resorted to the drastic sanction of striking their answer." (*Id.* at 1618.)  "Defendants' characterization of their further responses as being their 'first effort' to respond, while literally correct, is nonetheless misleading. The point that defendants fail to acknowledge is that, while this may have been their first effort to respond, it

EXHIBIT 10
Page 120

was not plaintiff's first [attempt] at receiving straightforward responses.  Defendants chose to ignore the many attempts, both formal and informal, made by plaintiff to secure fair responses from them.  Accordingly, we find no abuse of discretion by the trial court." (*Id.* at 1618.)

Yet another example is *Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481 (disapproved on another ground in *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478, fn. 4.)  In *Laguna Auto Body*, the plaintiffs were ordered to respond to interrogatories, but they repeatedly failed to do so.  (*Id.* at 483-484.)  The plaintiffs also failed to appear for noticed depositions.  (*Id.* at 484.)  In terminating the plaintiffs' action as a discovery sanction and denying reconsideration of this ruling, the trial court relied on "the plaintiff[s'] actions" as a basis for the sanctions.  (*Id.* at 486.) The appellate court affirmed, reasoning that the plaintiffs had violated a court order and various discovery statutes.  (*Id.* at 487-491.)  The appellate court rejected the plaintiffs' contention that dismissal for failing to attend the noticed deposition was an inadequate basis for the sanctions order, pointing to plaintiffs' noncompliance with the order regarding the interrogatories.  (*Id.* at 489-490.)

In other words, the Arbitrator may consider a party's entire conduct in the litigation in deciding whether to impose a sanction.  (See also, e.g., *Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1246 (reviewing cases in which trial courts imposed terminating sanctions "after considering the totality of the circumstances")[8]; *Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 430-431 (in resolving discovery matter, trial court may rely upon "past experience" and may look to the "history of the litigation"; "an abuse of discovery procedures in one instance can imply a continuing intent to abuse in other instances"].)

The Arbitrator is loath to impose terminating sanctions.  Very much so.  However, here, NBRA's litigation conduct prior to the Arbitrator's issuance of the Interim Award, in combination with its *willful* failure to comply with the Interim Award, demonstrate a level of (continuing) obstruction so egregious as to warrant (if not *require*) the imposition of terminating

---

[8] Notably, the *Lang* court stated that in assessing whether a terminating sanction was an abuse of discretion, the question "is not whether the trial court should have imposed a lesser sanction; rather the question is whether the trial court abused its discretion by imposing the sanction that it chose." (*Lang*, *supra*, 77 Cal.App.4th at 1245) (internal quotations and citations omitted).

EXHIBIT 10
Page 121

sanctions, in the interest of justice and looking at the totality of the circumstances. Unfortunately, the Arbitrator agrees with Plaintiff's observation that "[a]nything less would only encourage more of the same." (Motion, at 2:10.)  (It should be noted that nothing in this ruling should be construed as casting any aspersions whatsoever or being directed at NBRA's newly retained counsel.)

## Conclusion

Plaintiff's motion is GRANTED IN FULL.  Request for terminating sanctions is GRANTED.  Request for monetary sanctions is GRANTED.

Napoli Ripka Bern & Associates, LLP's answer is stricken and its default is entered.

A prove-up hearing is now scheduled for _____, 2018, at _____ a.m., at the Arbitrator's office.  At that time, Plaintiff is to prove up all of his claims against Napoli Ripka Bern & Associates, LLP and is to quantify all fees and costs incurred in connection with the instant motion.

DATED: _____        _____

Hon. Richard A. Stone (Ret.)
Arbitrator

EXHIBIT 10
Page 122

# EXHIBIT 11

EXHIBIT 11
Page 123

**- DO NOT FILE WITH THE COURT -**
**- UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 -**

CIV-050

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TELEPHONE NO.: 310.552.4400 | FOR COURT USE ONLY |
|---|---|---|
| James Goldman (SBN 57127); Kelly E. Halford (SBN 312251)<br>MILLER BARONDESS, LLP<br>1999 Avenue of the Stars<br>Suite 1000<br>Los Angeles, CA 90067 | | |

ATTORNEY FOR *(name):*  Marc I. Willick

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: Benchmark Resolution Group
MAILING ADDRESS: 633 West 5th Street, Suite 1000
CITY AND ZIP CODE: Los Angeles, CA 90071
BRANCH NAME:

PLAINTIFF:  MARC I. WILLICK

DEFENDANT:  NAPOLI BERN RIPKA & ASSOCIATES, LLP et. al.

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>15-6722-RAS |
|---|---|

To *(name of one defendant only):*    Napoli Bern Ripka & Associates, LLP et. al.
Plaintiff *(name of one plaintiff only):*    Marc I. Willick
seeks damages in the above-entitled action, as follows:

1. **General damages**                                                                                      AMOUNT

  a. ☐   Pain, suffering, and inconvenience . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

  b. ☐   Emotional distress   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

  c. ☐   Loss of consortium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

  d. ☐   Loss of society and companionship *(wrongful death actions only)* . . . . . . . . . . . . . . . . . . . . . $ 0.00

  e. ☐   Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

  f. ☐   Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

  g. ☐   Continued on Attachment 1.g.

2. **Special damages**

  a. ☐   Medical expenses *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

  b. ☐   Future medical expenses *(present value)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

  c. ☐   Loss of earnings *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

  d. ☐   Loss of future earning capacity *(present value)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

  e. ☐   Property damage   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

  f. ☐   Funeral expenses *(wrongful death actions only)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

  g. ☐   Future contributions *(present value) (wrongful death actions only)* . . . . . . . . . . . . . . . . . . . . $ 0.00

  h. ☐   Value of personal service, advice, or training *(wrongful death actions only)* . . . . . . . . . . . . . $ 0.00

  i. ☒   Other *(specify)* Breach of Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 5,300,000.00

  j. ☐   Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

  k. ☐   Continued on Attachment 2.k.

3. ☒   **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)* . . $ 15,900,000.00
     when pursuing a judgment in the suit filed against you.

Date: April 30, 2018

Kelly E. Halford
*(TYPE OR PRINT NAME)*

▶

*(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)*

*(Proof of service on reverse)*                                                                                      Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-050 [Rev. January 1, 2007] | STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | Legal<br>Solutions<br>☐ Plus | Code of Civil Procedure, §§ 425.11, 425.115 |
|---|---|---|---|

EXHIBIT 11
Page 124

| PLAINTIFF: MARC I. WILLICK | CASE NUMBER: | CIV-050 |
|---|---|---|
| DEFENDANT: NAPOLI BERN RIPKA & ASSOCIATES, LLP et. al. | 15-6722-RAS | |

## PROOF OF SERVICE

*(After having the other party served as described below, with any of the documents identified in item 1, have the person who served the documents complete this Proof of Service. Plaintiff cannot serve these papers.)*

1. I served the
   a. ☐ Statement of Damages    ☐ Other *(specify):*

   b. on *(name):*
   c. by serving    ☐ defendant    ☐ other *(name and title or relationship to person served):*

   d. ☐ by delivery    ☐ at home    ☐ at business
      (1) date:
      (2) time:
      (3) address:

   e. ☐ by mailing
      (1) date:
      (2) place:

2. Manner of service *(check proper box)*
   a. ☐ **Personal service.** By personally delivering copies. (CCP § 415.10)
   b. ☐ **Substituted service on corporation, unincorporated association (including partnership), or public entity.** By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP § 415.20(a))
   c. ☐ **Substituted service on natural person, minor, conservatee, or candidate.** By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP § 415.20(b)) **(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)**
   d. ☐ **Mail and acknowledgment service.** By mailing (by first-class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid, addressed to the sender. (CCP § 415.30) **(Attach completed acknowledgment of receipt.)**
   e. ☐ **Certified or registered mail service.** By mailing to an address outside California (by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (CCP § 415.40) **(Attach signed return receipt or other evidence of actual delivery to the person served.)**
   f. ☐ Other *(specify code section):*
      ☐ additional page is attached.

3. At the time of service I was at least 18 years of age and not a party to this action.
4. Fee for service: $ 0.00
5. Person serving:
   a. ☐ California sheriff, marshal, or constable
   b. ☐ Registered California process server
   c. ☐ Employee or independent contractor of a registered California process server
   d. ☐ Not a registered California process server
   e. ☐ Exempt from registration under Bus. & Prof. Code § 22350(b)

   f. Name, address and telephone number and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*(For California sheriff, marshal, or constable use only)*
I certify that the foregoing is true and correct.

Date:

Date:

▶ _____
(SIGNATURE)

▶ _____
(SIGNATURE)

EXHIBIT 11
Page 125

1
## PROOF OF SERVICE

2
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3
        At the time of service, I was over 18 years of age and not a party to this action.  I am
employed in the County of Los Angeles, State of California.  My business address is 1999 Avenue

4
of the Stars, Suite 1000, Los Angeles, CA 90067.

5
        On April 30, 2018, I served true copies of the following document(s) described as:

6
**STATEMENT OF DAMAGES**

7
on the interested parties in this action as follows:

8
**SEE ATTACHED SERVICE LIST**

9
        **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the
persons at the addresses listed in the Service List and placed the envelope for collection and

10
mailing, following our ordinary business practices.  I am readily familiar with the practice of
Miller Barondess, LLP for collecting and processing correspondence for mailing.  On the same

11
day that correspondence is placed for collection and mailing, it is deposited in the ordinary course
of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

12
I am a resident or employed in the county where the mailing occurred.  The envelope was placed
in the mail at Los Angeles, California.

13

14
        **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the
document(s) to be sent from e-mail address aalamango@millerbarondess.com to the persons at the

15
e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the
transmission, any electronic message or other indication that the transmission was unsuccessful.

16
        I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

17

18
        Executed on April 30, 2018, at Los Angeles, California.

19

20

21
_____

22
                              Alexandria Alamango

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400    FAX (310) 552-8400

EXHIBIT 11
Page 126

| | |
|---|---|
| 1 | **SERVICE LIST** |
| 2 | *Willick v. Napoli Bern Ripka*<br>**Case No. 2:15-CV-00652-AB-E** |
| 3 | Traci S. Lagasse, Esq. | *Attorneys for Defendants* |

Traci S. Lagasse, Esq.
Kelly Drew Folger, Esq.
Dionna F. Shear, Esq.
ANDREWS, LAGASSE, BRANCH &
BELL, LLP
4365 Executive Drive, Suite 950
San Diego, CA 92121
Tel.: (858) 461-6606 / Fax: (858) 461-6607
Email:          tlagasse@albblaw.com
                kfolger@albblaw.com
                dshear@albblaw.com
                pwaneis@albblaw.com
                ylopez@albblaw.com
                mpark@albblaw.com

*Attorneys for Defendants*
*MARC J. BERN*

Stephen J. Erigero
Tahereh Mahmoudian
ROPERS, MAJESKI, KOHN & BENTLEY
445 South Figueroa Street, Suite 3000
Los Angeles, CA 90071
Telephone: (213) 312-2000
Facsimile: (213) 312-2001
Email:          stephen.erigero@rmkb.com
          Tahereh.mahmoudian@rmkb.com

*Attorneys for Defendants*
*NAPOLI BERN RIPKA & ASSOCIATES, LLP;*
*NAPOLI BERN RIPKA SHKOLNIK &*
*ASSOCIATES, LLP;*
*NAPOLI BERN RIPKA SHKOLNIK, LLP;*
*NAPOLI BERN RIPKA LLP;*
*NAPOLI KAISER BERN LLP*

Todd E. Croutch, Esq.
FRASER, WATSON & CROUTCH, LLP
100 W. Broadway
Suite 650
Glendale, CA 91210
Tel.: (818) 543-1380 / Fax: (818) 543-1389
Email:          tcroutch@fwcllp.com

*Attorneys for Defendant*
*PAUL J. NAPOLI*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS  SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

EXHIBIT 11
Page 127

# EXHIBIT 12

EXHIBIT 12
Page 128

Honorable Richard A. Stone (Ret.)
BENCHMARK RESOLUTION GROUP
633 West 5th Street, Suite 1000
Los Angeles, California 90071
(213) 622-1002 PH
Arbitrator

## BENCHMARK RESOLUTION GROUP

## IN RE THE MATTER OF THE ARBITRATION BETWEEN

| | |
|---|---|
| MARC I. WILLICK, | ) |
| | ) **ORDER RE: CLAIMANT'S MOTION** |
| Plaintiff/ Claimant, | ) **FOR TERMINATING AND MONETARY** |
| | ) **SANCTIONS** |
| vs. | ) |
| | ) DATE: June 30, 2018 |
| NAPOLI BERN RIPKA & | ) TIME: 9:00 a.m. |
| ASSOCIATES, LLP et. al., | ) PLACE: Benchmark Resolution Group |
| | ) |
| Defendants/Respondents | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

Plaintiff's/Claimant's motion for terminating and monetary sanctions against defendant/respondent Napoli Bern Ripka & Associates, LLP came on for hearing before the Arbitrator, Hon. Richard A. Stone (Ret.), on June 30, 2018. Having considered the parties' written briefs on the motion, the supplemental briefs and the arguments of counsel, the Arbitrator now issues the following order granting the motion in full as to the accounting and breach of contract causes of action.

1

## Background

This breach of contract action arises out of a dispute between a California attorney ("Plaintiff" or "Claimant" or "Willick") and the New York law firm Napoli Bern Ripka & Associates ("NBRA" or "Napoli Bern") regarding nonpayment of fees. Plaintiff specializes in representing individuals suffering from asbestos-related illnesses, including mesothelioma. Plaintiff's law office agreed to act as local counsel for NBRA with respect to certain asbestos-related cases in exchange for payment of fees, pursuant to two contracts: a "Co-Counsel Agreement for California Personal Injury Claims" dated March 17, 2011, and an employment agreement dated May 20, 2011.

Less than two years into the relationship, Plaintiff became concerned with numerous facets thereof, including whether NBRA was paying all referral fees due to him. The relationship disintegrated. On December 12, 2014 (i.e., over 3 years and four months ago), Plaintiff filed a complaint in the Superior Court of California, Los Angeles, Case No. BC566742, against NBRA, Napoli Bern Ripka Shkolnik & Associates, LLP, Napoli Bern Ripka Shkolnik, LLP, Napoli Bern Ripka, LLP, and Napoli Kaiser Bern, LLP (collectively, "Entity Defendants"); and Marc J. Bern ("Bern") and Paul J. Napoli ("Napoli") (collectively, "Individual Defendants"). The Complaint alleged five causes of action against all of the defendants: (1) accounting (re: fees received on cases referred by Plaintiff or his referral sources); (2) breach of contract; (3) fraud; (4) violation of Business & Professions Code § 17200; and (5) negligent misrepresentation.

On January 28, 2015, the Entity Defendants removed the case to federal court. The Entity Defendants subsequently filed a motion to compel arbitration of the matter pursuant to the May 2011 Contract, which motion the District Court granted on August 20, 2015. In granting the motion, the District Court relied, in part, on the defendants' representation that they would pay their portion of the costs of arbitration.

On September 15, 2015, the parties selected the Arbitrator. The arbitration was initially scheduled to take place in two phases: liability and damages (if Plaintiff prevailed on liability). The hearing in Phase 1 was originally set for January 24-25, 2017, and the hearing in Phase 2

2

was set for March 14-15, 2017. However, the hearing dates were vacated because the defendants did not comply with their discovery obligations.

In November 2017, the Arbitrator issued two tentative rulings in favor of Plaintiff on his first cause of action for an accounting, regarding the scope of the accounting and the responsibility for paying the costs of same. On January 27, 2018, the Arbitrator issued the final ruling on the matter, captioned, "Interim Award Re Accounting" ("the Interim Award").

In the Interim Award (Motion, Ex. G), the Arbitrator ruled in favor of Plaintiff on his first cause of action for an accounting (against NBRA only) and ordered an accounting.

In finding that an accounting was appropriate, the Arbitrator stated, *inter alia*, that "it is clear, based on the evidence submitted by Mary Keyes, one of Willick's referral sources, that Willick may be entitled to substantial compensation." (Interim Award, at 5:23-25.)[1]

The scope of the accounting ordered was quite broad: "The accounting must identify all cases referred by Willick or Willick's Referral Sources to [NBRA] or any law firm with which Paul Napoli or Marc Bern have been affiliated, and quantify the fees received on such cases. The accounting must also identify all cases for which Willick performed work as local counsel between March 7, 2011 and May 20, 2011, along with all Assigned Cases that Willick worked on while employed by [NBRA], and include the information identified in Section I [requiring extensive information as to each case]."

The Interim Award appointed Bjorn L. Malmlund of Ernst & Young LLP ("the Accountant" or "E&Y") -- *whom NBRA itself had, in October 2017, proposed to head up the accounting* -- to conduct the accounting. The Interim Award also directed NBRA to bear the costs of the accounting, including a $100,000.00 retainer to E&Y.

The Arbitrator concluded that it was appropriate to order NBRA to bear the costs of the accounting primarily because:

[T]he equities weigh against placing this burden on Willick. First, Defendant

---

[1] According to a list provided by Plaintiff's key referral source (Mary Keyes) pursuant to an order issued by the United States District Court, Plaintiff referred at least *2500* cases to the defendants in this action. Defendants claimed in discovery that he referred *4* cases. This is discussed further in footnote 2, *post*.

1    Napoli Bern Ripka & Associates, LLP appears to have breached its obligations under the
2    May Contract to pay Willick for cases on which he worked. Second, Defendant Napoli
3    Bern Ripka & Associates, LLP appears to have breached its obligation under the May
4    Contract to pay Willick the portion of fees they received on cases accepted from his
5    Referral Sources. Third, Defendant Napoli Bern Ripka & Associates, LLP have *never*
6    *provided Willick with an accounting even though it promised him that it would do so.*
7    Fourth, Defendant Napoli Bern Ripka & Associates, LLP *breached its discovery*
8    *obligations and prevented Willick from obtaining the documents and information*
9    *necessary to perform an accounting on his own.* Fifth, Defendant Napoli Bern Ripka &
10   Associates, LLP *failed to fulfill its promises during discovery to Willick's detriment.*
11   And sixth, *material information provided during discovery relating to cases referred by*
12   *Willick's referral sources proved to be false.*   Interim Award, at 5:26-6:9 (emphases
13   added).[2]

14       By late March 2018, NBRA still had failed to pay the $100,000.00 retainer (or even sign
15   a retainer agreement with E&Y).  Accordingly, Plaintiff brought this motion seeking
16   terminating and monetary sanctions for failure to comply with the Interim Award.  NBRA filed
17   opposition papers.  Plaintiff filed reply papers.

18       After issuing the Tentative Ruling on this motion, it appears counsel met and conferred
19   and agreed to ask the Arbitrator to hold off making an ultimate ruling on this motion until the

20

21   ────────────────────────
22   [2]  In his October 7, 2017 order denying Defendants' motion to dismiss Plaintiff's accounting
     claim, the Arbitrator stated: "While this case does not involve royalties, the amounts allegedly
23   due and owing to Willick are similar in that he claims he is owed a percentage of fees for cases
     he brought in to the firm.  This could feasibly be accomplished through discovery. However, for
24   the reasons set forth in Willick's opposition, *discovery has been woefully insufficient in this*
     *regard. Napoli Bern only identified four individuals as having been referred by Mary Keyes, one*
25   *of Mr. Willick's referral sources. According to Willick, documentation provided by Ms. Keyes*
     *shows that 2,520 cases were referred to Napoli Bern, not 4... The arbitrator participated in a*
26   *number of telephonic conferences with counsel seeking to assist the parties to produce the*
     *requisite discovery consistent with Respondents' legal obligations. When the arbitrator*
27   *scrutinizes the discovery responses of the individual and entity Respondents, one cannot help but*
     *conclude that they have chosen to prevent Willick from obtaining appropriate discovery to*
28   *establish his claims.*"  (Ruling re Motion to Dismiss Accounting Claim, at 7:24-8:10) (emphases
29   added).

4

parties could mediate the matter.  At the parties' request, the Arbitrator agreed to withhold the final ruling until the mediation was concluded.  Notwithstanding the agreement to continue the Ruling, the Arbitrator made it clear to the parties that there did not appear to be a substantial basis to modify the tentative ruling.

On June 15, 2018, in the morning, the Arbitrator was advised by Willick's counsel that the matter had not settled at mediation.  Shortly thereafter, the Firm's counsel notified the Arbitrator that a payment of $110,000.00 (the retainer plus an additional fee to expedite the process) had been paid to the accountant's firm that had been agreed upon to conduct the accounting.  Willick's counsel followed that email with an email and an accompanying letter.  Supplemental papers were filed by both sides, notwithstanding their agreement at the time the Arbitrator granted the continuance to allow for mediation that no additional materials or information would be submitted regarding the motion.

## The Competing Contentions of Plaintiff and Defendant

Plaintiff asserts that the Interim Award is equal to a discovery order, and that terminating and monetary sanctions against NBRA are merited due to its violation of that order.  As Plaintiff puts it: "[NBRA] was ordered to pay for the cost of an accounting.  It has failed to do so.  As a result, the accounting has not been conducted or even commenced; this matter — which was been pending for over three years — has been delayed once again, thus jeopardizing the efficacy of any further relief that may be awarded to Plaintiff…; and Willick has incurred substantial additional costs.  [NBRA's] conduct is inexcusable and outrageous, and sanctionable.  Both terminating sanctions and monetary sanctions are warranted and, indeed, required.  At this point, anything less would be too little, too late.  [NBRA]'s Answer to Willick's Complaint should be stricken; a default award should be issued; a 'prove up' hearing should be scheduled; and, following the hearing, a final award should be issued on Willick's claims against [NBRA]."  (Motion, at 3:3-13.)

NBRA points out the highly disfavored nature of terminating sanctions and asserts that same are not appropriately imposed here because it has tried, in good faith, to move forward

with the accounting (including the payment of the $100,000.00 retainer to E&Y).  "NBR[A] has made a reasonable and good faith effort to comply with the Interim Award given that the Interim Award was not finalized until January 27, 2018, the Engagement Agreement with [E&Y] has yet to be finalized, and the Referee [in New York] has yet to approve the $100,000.00 retainer fee for [E&Y].  On March 27, 2018, NBR[A] filed suit against its insurer to seek to compel payment of the retainer as a covered item under the insurance policy.  The record before the Arbitrator supports a decision denying the subject motion." (Opposition, at 2:10-17.)  "Given the complex nature of this case, NBR[A] was required to coordinate with its insurance carrier, the Referee, the Accountant [E&Y], and other parties to comply with the Interim Award, which necessarily takes time.  As demonstrated in the various emails and letters sent by and on behalf of NBR[A], it is evident that NBR[A] made a good faith effort to fulfill its obligations under the Interim Award.  Accordingly, Plaintiff's motion should be denied." (Opposition, at 6:15-21.)

On reply, Plaintiff cogently addresses NBRA's arguments on a point-by-point basis.  The Referee will not summarize those arguments here, because they will be discussed (and even quoted) at length below.

NBRA filed supplemental papers as indicated above after the matter failed to resolve at mediation but prior to the hearing scheduled for June 30, 2018.  In those papers, NBRA requested the Arbitrator set aside the Tentative Order on four grounds:

1. The entity defendants deposited $110,000.00 with the accounting firm as a retainer and an additional fee to expedite the accounting process;

2. Having only adjudicated the accounting claim, imposing terminating sanctions for the remaining four causes of action would be "disproportionate and unjust," i.e. the penalty should be appropriate to the dereliction and should not exceed that which is required to protect the interest of the party entitled to but denied discovery;

3. Imposing terminating sanctions would have improperly placed Claimant "in a better position than he would have been in had the Interim Award been complied with earlier, i.e., prevailing party should not be in a better position than he would have

been had he obtained the discovery and it had been completely favorable to his cause; and

4. Imposing terminating sanctions in this instance improperly acts as a tool for punishment and avoidance of a determination on the merits, i.e. the purpose of the discovery sanction is not to provide a weapon for punishment, forfeiture and the avoidance of trial on the merits, but rather to prevent abuse of the discovery process and correct the problem presented.

Willick filed a supplemental brief in response to NBRA's papers. Willick recounts the factual history of the matter and the Tentative Order. Willick asks the Arbitrator to disregard the supplemental brief based upon the agreement reached between the parties and counsel to continue the ruling on the Tentative Order when the Arbitrator was prepared to make the Tentative Order the final order, strike NBRA's answer, enter its default, and proceed forward to a default prove-up hearing.

Willick argues that the payment for the accounting does not render the motion moot for four reasons:

1. No further argument or evidence was to be submitted prior to the issuance of a final order if the matter did not settle;

2. The Arbitrator rejected a conditional ruling on payment being made due to the delays that had consistently occurred preventing Willick from obtaining discovery;

3. The Arbitrator's decision was not based solely on NBRA's failure to pay for the accounting, but that was simply the last in a series of persistent and pervasive discovery abuses, dilatory behavior, and dishonesty during the case, including woefully insufficient and demonstrably false discovery responses;

4. NBRA's calculation to wait until the ruling before moving forward toward payment for the accounting.

In addition, Willick waived his claims to all causes of action but for the accounting and breach of contract claims to avoid putting himself in a "better position than he would have been had he obtained the discovery and it had been completely favorable to his cause". The Arbitrator had

already ruled that the cause of action for the accounting had been established, and that Willick had proven, essentially, the elements for the breach of contract cause of action (which he claimed was inextricably intertwined with the accounting claim), and the Arbitrator had ruled on NBRA's claimed defense making the entry of NBRA's default on those two causes of action consistent with the effort to prevent further discovery abuses. Finally, Willick argues that NBRA failed to provide an explanation for why entry of default and the subsequent award would lead to an unjust result.

### Analysis

Code of Civil Procedure Section 2023.030 authorizes a trial court to impose monetary sanctions, issue sanctions, evidence sanctions, or terminating sanctions against 'anyone engaging in conduct that is a misuse of the discovery process.'" (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 991.)[3]  American Arbitration Association Rule R-58, applicable to this dispute in light of the parties' arbitration agreement specifically referencing same, provides: "The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with these rules or an order of the arbitrator."[4]

---

[3] The Arbitrator notes that in October 2017, he denied NBRA's motion for terminating sanctions brought under this very statute.

[4] Further, Code of Civil Procedure section 1283.05(b) provides that arbitrators "have power, in addition to the power of determining the merits of the arbitration, to enforce the rights, remedies, procedures, duties, liabilities, and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions, and penalties as can be or may be imposed in like circumstances in a civil action by a superior court of this state under the provisions of this code, except the power to order the arrest or imprisonment of a person." (See, *Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 535 ["[s]ection 1283.05's subdivision (b) grants arbitrators the power to enforce discovery through sanctions," and "[t]hus, in an arbitration proceeding the arbitrator's power to enforce discovery resembles that of a judge in a civil action in superior court"]; *Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1091 [section 1283.05 grants power to an arbitrator to impose discovery sanctions].)

EXHIBIT 12
Page 136

NBRA does not dispute that the Interim Order is in the nature of a discovery order. *Nor could it reasonably do so.* As is aptly stated in the moving brief: "The purpose of the Interim Award was to obtain the information needed to quantify [NBRA's] liability in this case. It was intended to serve the same function as an order compelling discovery.... Indeed, it was, in large part, Defendants' failure to provide full and accurate responses to discovery requests concerning [referred cases] that led the Arbitrator to his decision on Willick's cause of action for an accounting." (Motion, at 9:2-7.)[5]

"The court may impose a terminating sanction by ... [¶] ... [¶] ... rendering a judgment of default against th[e offending] party." (CCP 2023.030(d)(4).) A court is afforded broad discretion in selecting discovery sanctions, "subject to reversal only for abuse." (*Doppes, supra,* at 992; see also, *R.S. Creative, Inc. v. Creative Cotton Ltd.* (1999) 75 Cal.App.4th 486, 496.)

Three facts are prerequisite to imposition of "doomsday" sanctions: (1) there must be a failure to comply; (2) the failure must be willful; and (3) there must be a prior court order compelling compliance with discovery that has been disobeyed. (*Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545; *Ruvalcaba v. Government Employees Ins. Co.* (1990) 222 Cal.App.3d 1579, 1580-1581.)[6]

Even if those three facts are established, terminating sanctions are disfavored and need not be imposed: "Discovery sanctions are intended to remedy discovery abuse, not to punish the offending party. Accordingly, sanctions should be tailored to serve that remedial purpose,

---

[5] *Cf., In re Marriage of Kasteiner,* 2015 WL 4601122, *5 ("The appointment of the accounting expert to obtain the information and analysis necessary to understand the nature, value and cash flow of Paul's business to make an appropriate support order *was in the nature of a discovery order*. Therefore, the court had authority under both Code of Civil Procedure section 2023.030 and its inherent judicial powers to impose terminating sanctions for failure to comply with court orders and for misuse of the discovery process") (emphasis added).

[6] Willfulness in failing to comply with discovery obligations does not require wrongful intentions; a simple lack of diligence may be deemed willful where the party knew he had an obligation, had the ability to comply, and failed to do so. (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 787.) The party with the obligation to respond to discovery – i.e., NBRA - bears the burden of showing that the failure to respond or comply was not willful. (*Cornwall v. Santa Monica Dairy Co.* (1977) 66 Cal.App.3d 250, 252-253.)

should not put the moving party in a better position than he would otherwise have been had he obtained the requested discovery, and should be proportionate to the offending party's misconduct." (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1223. See also, e.g., *Rail Services of America v. State Comp. Ins. Fund* (2003) 110 Cal.App.4th 323, 331–332 ["the trial court may impose sanctions that are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he [or she] seeks but the court may not impose sanctions which are designed not to accomplish the objects of the discovery but to impose punishment" (internal quotations and citations omitted)]; *In re Marriage of Economou* (1990) 224 Cal.App.3d 1466, 1476 ["Discovery sanctions cannot be imposed to punish the offending party or to bestow an unwarranted 'windfall' on the adversary"]; *Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 793 [the sanction should be "appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery"].)[7]

A terminating sanction is a drastic measure that denies a party the right to a trial on the merits.  Accordingly, consistent with the authorities discussed above, our courts have limited its use to only the rarest and most extreme cases of litigation misconduct when no lesser sanction can preserve the fairness of the trial and restore balance to the adversary system.  (*Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 916–917; see also, *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 279 ["A decision to order terminating sanctions should not be made lightly"]; *Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 761, 764 [establishing a trial court's inherent power to dismiss an action for discovery abuse].)

The Arbitrator concludes that, unfortunately, this is one of those rare and extreme cases. In this regard, none of the four excuses offered by NBRA hold water; none are *legitimate* excuses.  Indeed, a close look at the proffered excuses only reveals NBRA's continuing, egregious delay and misconduct.

---

[7] NBRA argues: "If Plaintiff's motion were granted and termination sanctions issued, this would undoubtedly place Plaintiff in a better position than he would be in had the alleged non-compliance with the Interim Award not taken place, as argued by Plaintiff." (Opposition, at 8:25-28.) However, NBRA provides *no explanation* as to why that is the case.

10

EXHIBIT 12

The excuse that the Interim Award was not finalized until January 27, 2018:

NBRA asserts that although the Arbitrator issued his tentative ruling in November 2017, the Arbitrator did not finalize it until January 27, 2018 when he issued the formal Interim Award. This fact actually works *against* NBRA. As Plaintiff states in his reply brief:

[NBRA] admits its insurance company denied coverage for the $100,000 retainer for the Accountant on November 27, 2017 more than two months before [NBRA] informed the Arbitrator and Willick that the insurance company would not pay…. During this time, there were multiple conferences with the Arbitrator related to finalizing the Interim Award and beginning the accounting, but *at no point was the Arbitrator or Willick informed that the insurance company had denied coverage, or even that any decision that the insurer might make might have an impact on compliance with the Interim Award.* [Para.] *Although [NBRA] knew since November 27, 2017, that the insurance company had denied coverage, they did nothing to attempt to secure other means of payment until February 28, 2018, more than three months after the insurance company denied coverage and nearly a month beyond the date that [NBRA] was supposed to inform the parties and the Arbitrator as to whether it would pay for the Accounting February 5, 2018.* Reply, at 4:4-16 (emphases added).

The excuse that the Engagement Agreement with E&Y has yet to be finalized:

Per NBRA, it has been "work[ing] with the Accountant to revise the Engagement Agreement as needed, which has yet to be finalized." It asserts that "[t]he dispute over th[e Enagagement Agreement's Personal Data] provision (and potentially other provisions) must first be resolved before the Engagement Letter can be finalized." (Opp. at 5:3-4.)

The Arbitrator has carefully reviewed NBRA's proposed revisions to E&Y's engagement agreement. The *many* reasons why this excuse fails are tackled handily at 5:13-7:9 of the reply brief and will not be repeated at length here. Suffice it to say that the Arbitrator wholeheartedly agrees with Plaintiff's observations that: (1) *nothing* in the Interim Award

11

excuses NBRA from withholding the retainer while it quibbles with E&Y regarding the terms of the engagement letter; (2) any issues regarding the conditions under which E&Y would be willing to serve as the accountant in this case should have been addressed and resolved prior to that firm being proposed as a candidate by NBRA itself, and certainly prior to the hearing when the Arbitrator selected E&Y; and (3) NBRA's disputes with E&Y over the terms of the agreement - including *but not limited to* its requests that E&Y dispense with its arbitration provision, that E&Y dispense with certain exoneration and liability limitation provisions, and that E&Y dispense with its Personal Data provision - are "contrived" disputes inappropriately created by NBRA to (among other things) delay the accounting.

<u>The excuse that the Referee in New York has yet to approve the $100,000.00 retainer fee for E&Y</u>:

The facts pertinent to this excuse, as set forth in the opposition brief, are as follows: (1) "Mark C. Zauderer (the 'Referee') was appointed as the referee in the action Napoli v. Bern, Index No. 159576/2014 and is empowered to hear and determine any and all issues, and to perform any and all acts in this action with all the powers of the Supreme Court of the State of New York"; (2) "On February 28, 2018, Counsel for Entity Defendants wrote to the Referee requesting authorization for the $100,000.00 retainer for Ernst & Young to conduct the accounting"; and (3) "On March 14, 2018, the Referee responded stating that he is awaiting the advice of Mr. Napoli and Mr. Bern on how to proceed." (Opp., at 5:9-21.)

As stated in the reply brief, Napoli Bern's assertion that it should be excused for not complying with the Interim Award because the Referee hasn't authorized payment lacks merit:

*First*, Mr. Zauderer hasn't authorized payment because "he is waiting the advice of Mr. Napoli and Mr. Bern how to proceed." ... However, there is no indication that Mr. Zauderer doesn't have the funds. Indeed, Napoli Bern has not provided any information whatsoever concerning its financial condition or the results of its operations.... In fact, it is telling that neither Napoli or Bern, nor Mr. Zauderer, nor anyone but one of Napoli Bern's new attorneys in this case (who does not purport to have any personal knowledge regarding Napoli Bern's finances, the coverage issues, or the proceedings in Napoli v.

Bern) has submitted a declaration or other evidence in opposition to this motion. [Para.] *Second*, Mr. Zauderer has been waiting for the authorization since February 28, 2018, almost two months ago. Why hasn't the authorization been given? No explanation is provided in the Opposition.  Reply, at 4:21-5:5.

The excuse that the NBRA's insurer has denied payment of the retainer as a covered item under the insurance policy (and NBRA's filing of a coverage suit):

NBRA, pointing out that in late March 2018 it "filed suit against its insurer, Evanston Insurance Company, seeking court intervention to compel payment of the $100,000.00 retainer" (and sought authorization from the New York Referee), argues that it "has made strides to comply with the Interim Award." (Opp., at 7:15-16.)

However, as Plaintiff correctly counters: "Napoli Bern never asked the Arbitrator to make the Interim Award relating to the cost of the accounting conditioned on or subject to the insurance company making the payment. If they intended to delay the accounting process until they received a payment from the insurance company, they should have said something a long time ago.... [Para.] The bottom line is that the Interim Award requires Napoli Bern - not the insurer - to pay for the cost of the accounting, including the $100,000 retainer required by the accountant that they proposed. The Award does not permit Napoli Bern to delay payment or compliance with the Award pending a resolution of what will likely be a lengthy case regarding coverage for Willick's claims." (Reply, at 3:15-27.)

Based on the foregoing, as well as the prior history of this action (with which the Arbitrator is quite familiar, and part of which is summarized in the "Background" section of this order, *ante*), the Arbitrator finds that NBRA's assertion that it sought to comply with the Interim Order "in good faith" lacks credibility. To put it another way: the Arbitrator concludes that NBRA's failure to comply with the Interim Order was *willful*, even though the payment was finally made long after the Tentative Order.

Numerous cases stand for the proposition that terminating sanctions are appropriate in egregious instances of discovery misconduct. Indeed, "where a violation is willful, preceded by

a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction." (*Mileikowsky, supra*, 128 Cal.App.4th at 279.)

One example is *Hartbrodt v. Burke* (1996) 42 Cal.App.4th 168. In that case, the plaintiff commenced an action for breach of contract and tort seeking return of a $2,000,000 capital investment in a company that never got off the ground. The defendant served document production requests seeking a tape made of a conversation between the parties relevant to the issues of the complaint. The defendant also alleged the plaintiff had played the tape for him and claimed he would make trouble for the defendant unless he received $2,000,000. The plaintiff responded that the tape was privileged from discovery by the privilege against self-incrimination, as the plaintiff was under investigation by the federal government for mail fraud. (*Id.* at 170-171.) A discovery referee concluded the tape contained relevant material and ordered a redacted version made available for inspection, and the referee's conclusions were upheld by the trial court. (*Id.* at 171.) The trial court ordered the tape produced within 30 days; the plaintiff failed to comply. Thereafter, the trial court granted the defendant's motion for a terminating sanction and dismissed the action. (*Id.* at 171-172.) *Hartbrodt* found no abuse of discretion based upon the plaintiff's willful obstruction of discovery in his failure to produce the tape after both the referee and trial court ordered its production. (*Id.* at 175.)

Similarly, in *Collisson & Kaplan v. Hartunian* (1994) 21 Cal.App.4th 1611, the trial court imposed terminating sanctions after the defendants failed to comply with a single court order to produce discovery. After failing to receive appropriate responses, or timely responses, to numerous discovery requests, the plaintiff sent the defendants letters requesting compliance with the discovery, to which the defendants failed to respond. The trial court granted the plaintiff's motions to compel and ordered the defendants to respond to discovery. The defendants failed to comply with these orders, and the plaintiff filed a motion to strike the defendants' answer. (*Id.* at 1614-1615.) After the motion was granted, the defendants filed a motion for reconsideration and responded to discovery. (*Id.*) The *Collisson & Kaplan* court rejected the defendants' argument that "that since this was their 'first effort' at drafting responses, the trial court should not have resorted to the drastic sanction of striking their

EXHIBIT 12

Page 142

answer." (*Id.* at 1618.) "Defendants' characterization of their further responses as being their 'first effort' to respond, while literally correct, is nonetheless misleading. The point that defendants fail to acknowledge is that, while this may have been their first effort to respond, it was not plaintiff's first [attempt] at receiving straightforward responses. Defendants chose to ignore the many attempts, both formal and informal, made by plaintiff to secure fair responses from them. Accordingly, we find no abuse of discretion by the trial court." (*Id.* at 1618.)

Yet another example is *Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481 (disapproved on another ground in *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478, fn. 4.) In *Laguna Auto Body*, the plaintiffs were ordered to respond to interrogatories, but they repeatedly failed to do so. (*Id.* at 483-484.) The plaintiffs also failed to appear for noticed depositions. (*Id.* at 484.) In terminating the plaintiffs' action as a discovery sanction and denying reconsideration of this ruling, the trial court relied on "the plaintiff[s'] actions" as a basis for the sanctions. (*Id.* at 486.) The appellate court affirmed, reasoning that the plaintiffs had violated a court order and various discovery statutes. (*Id.* at 487-491.) The appellate court rejected the plaintiffs' contention that dismissal for failing to attend the noticed deposition was an inadequate basis for the sanctions order, pointing to plaintiffs' noncompliance with the order regarding the interrogatories. (*Id.* at 489-490.)

In other words, the Arbitrator may consider a party's entire conduct in the litigation in deciding whether to impose a sanction. (See also, e.g., *Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1246 (reviewing cases in which trial courts imposed terminating sanctions "after considering the totality of the circumstances")[8]; *Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 430-431 (in resolving discovery matter, trial court may rely upon "past experience" and may look to the "history of the litigation"; "an abuse of discovery procedures in one instance can imply a continuing intent to abuse in other instances"].)

---

[8] Notably, the *Lang* court stated that in assessing whether a terminating sanction was an abuse of discretion, the question "is not whether the trial court should have imposed a lesser sanction; rather the question is whether the trial court abused its discretion by imposing the sanction that it chose." (*Lang, supra,* 77 Cal.App.4th at 1245) (internal quotations and citations omitted).

15

EXHIBIT 12
Page 143

The Arbitrator is loath to impose terminating sanctions. Very much so. However, here, NBRA's litigation conduct prior to the Arbitrator's issuance of the Interim Award, in combination with its *willful* failure to comply with the Interim Award until faced with the entry of default by means of the *doomsday sanctions*, demonstrate a level of (continuing) obstruction so egregious as to warrant (if not *require*) the imposition of terminating sanctions, in the interest of justice and looking at the totality of the circumstances. Unfortunately, the Arbitrator agrees with Plaintiff's observation that "[a]nything less would only encourage more of the same." (Motion, at 2:10.) However, because the discovery issues and the Interim Award were directed to information that would have primarily related to the causes of action for an Accounting and Breach of Contract, the Arbitrator will only consider those two causes of action (as agreed to by the Claimant) by way of a prove-up hearing. (It should be noted that nothing in this ruling should be construed as casting any aspersions whatsoever or being directed at NBRA's newly retained counsel.) By limiting the default to only those two causes of action, the Arbitrator is limiting the notion of the imposition of a "penalty" or the suggestion that the entry of the default award is in some manner "inequitable". Moreover, it limits the Claimant's damages to contractual damages which would have been contemplated "had he obtained the discovery and it had been completely favorable to his cause".

NBRA has systematically, thoughtfully and dishonestly denied Willick the discovery necessary to present his claims for the last number of years. Despite his best efforts, those of his counsel and the involvement of the Arbitrator on a number of occasions, he was, again, denied the opportunity to obtain the information necessary to present his case. Based upon the totality of the circumstances, the Arbitrator hereby finds that there was no reasonable alternative to obtain compliance from NBRA to provide the appropriately requested discovery Willick has been seeking for the last number of years.

## Conclusion

Claimant's motion is GRANTED IN FULL regarding the causes of action for an accounting and breach of contract. Request for terminating sanctions for those two causes of action is GRANTED. Request for monetary sanctions is GRANTED.

16

EXHIBIT 12
Page 144

1    Napoli Ripka Bern & Associates, LLP's answer is stricken, and its default is entered for

2    those two causes of action.

3    A prove-up hearing on the Accounting and Breach of Contract causes of action was held

4    on June 30, 2018, at 9:00 a.m., at the Arbitrator's office.  At that time, Plaintiff presented his

5    evidence and argument to prove up all of his claims against Napoli Ripka Bern & Associates,

6    LLP.  The prove up paperwork has been submitted to the Arbitrator and will be the subject of a

7    later ruling and award.  Willick is to quantify all fees and costs incurred in connection with the

8    instant motion and that too, without stipulation, will be heard at a later time.

9

10

11   DATED: _7/3/18_                    _____

12                                      Hon. Richard A. Stone (Ret.)

13                                      Arbitrator

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

# EXHIBIT 13

EXHIBIT 13
Page 146

1   Honorable Richard A. Stone (Ret.)
    BENCHMARK RESOLUTION GROUP
2   633 West 5th Street, Suite 1000
    Los Angeles, California 90071
3   (213) 622-1002 PH
    Arbitrator
4

5

6                BENCHMARK RESOLUTION GROUP, LLC.

7

8

9   MARC I. WILLICK, an individual, |   **ADRS CASE NO. 15-6722-RAS**

10         Plaintiff, |   **FINAL AWARD ON PLAINTIFF'S CLAIMS AGAINST DEFENDANT**

11         v. |   **NAPOLI BERN RIPKA & ASSOCIATES, LLP**

12   NAPOLI BERN RIPKA & ASSOCIATES,
    LLP, a purported limited liability partnership;
13   NAPOLI BERN RIPKA SHKOLNIK &
    ASSOCIATES, LLP, a purported limited
14   liability partnership; NAPOLI BERN RIPKA
    SHKOLNIK, LLP, a purported limited
15   liability partnership; NAPOLI BERN RIPKA,
    LLP, a purported limited liability partnership;
16   NAPOLI KAISER BERN, LLP, a purported
    limited liability partnership; MARC J. BERN,
17   an individual; PAUL J. NAPOLI, an
    individual; and DOES 1 through 50,
18

19         Defendants.

20

21

22

23

24

25

26

27

28

393034.2

# FINAL AWARD

This Final Award is based on the following facts:

1.      In 2011, Plaintiff/Claimant Marc I. Willick, a California-based attorney, entered into two contracts with Defendant Napoli Bern Ripka & Associates, LLP ("Napoli Bern").  In the first contract, Willick agreed to serve as local counsel for Napoli Bern.  In the second contract, Willick agreed to join Napoli Bern as an employee, and Napoli Bern agreed to make certain payments to Willick based on fees received by Napoli Bern from cases that Willick or his "Referral Sources" (which were identified in an exhibit to the second contract) referred to Napoli Bern.  The second contract effectively superseded the first contract.

2.      Willick's employment with Napoli Bern terminated in or about December 2012.

3.      On December 12, 2014, Willick filed a complaint in the Los Angeles Superior Court against Napoli Bern, its two equity partners – Paul Napoli ("Napoli") and Marc Bern ("Bern"), and certain other partnerships that succeeded to or were otherwise a reformulation of Napoli Bern's business and in which Napoli and Bern were the two equity partners.  Willick alleged, among other things, that Napoli Bern had received fees on cases that Willick or his Referral Sources had referred to Napoli Bern but had failed and refused to make any payments to Willick on account of such fees.  Willick alleged claims for an accounting and breach of contract, among other theories.

4.      On January 28, 2015, all Defendants other than Napoli and Bern (the "Entity Defendants") removed the case to the United States District Court for the Central District of California.

5.      Thereafter, Defendants answered Willick's complaint.  They denied the material allegations in the complaint and alleged various affirmative defenses.

6.      On June 17, 2017, the Entity Defendants moved to compel arbitration of Willick's claims against them.  Napoli and Bern joined in the motion.  Willick opposed the motion.

7.      On August 20, 2015, the District Court granted the motion to compel arbitration.

8.      On September 15, 2015, the undersigned was appointed as the Arbitrator.

9.      On September 15, 2017, Napoli Bern moved for judgment on Willick's first cause

EXHIBIT 13
Page 148

1  of action for an accounting, contending that Willick was not entitled to an accounting under New

2  York law.

3       10.    On October 6, 2017, following hearings on October 5 and 6, 2017, the Arbitrator

4  denied Napoli Bern's motion.  In doing so, the Arbitrator found that Willick was, in fact, entitled

5  to an accounting for purposes of compiling information concerning the cases that Willick's

6  Referral Sources referred to the Entity Defendants, including the amount of fees received by them

7  on such cases.

8       11.    At the conclusion of the hearing on October 6, 2017, all parties agreed and the

9  Arbitrator decided that a further hearing on whether Willick was entitled to an accounting was

10  unnecessary in light of the decision made by the Arbitrator on October 7, 2017.  It was further

11  agreed by the parties and the Arbitrator that the remaining issues regarding the accounting –

12  specifically, the information to be included in the accounting (based on the Arbitrator's

13  interpretation of the second contract), who would conduct the accounting, and who would pay for

14  the accounting – would be addressed in and decided based on written submissions and a hearing

15  before the Arbitrator.  The parties then provided those submissions later in October 2017.

16       12.    On November 1, 2017, the Arbitrator issued a tentative ruling on the scope of the

17  accounting.  The Arbitrator also tentatively ruled that Napoli Bern would be obligated to pay for

18  the cost of the accounting.  Further hearings were conducted on November 5 and 11, 2017.  At the

19  conclusion of the hearing on November 11, 2017, the Arbitrator adopted the tentative rulings

20  issued on November 1, 2017 as his final rulings, and appointed the accountant proposed by Napoli

21  Bern—Bjorn Malmlund of Ernst & Young—to conduct the accounting.

22       13.    On January 11, 2018, the Arbitrator issued an Interim Award, confirming the

23  tentative rulings made in November 2017.  The Interim Award thus:  (a) confirmed that Willick is

24  entitled to an award in his favor of his first cause of action and, in particular, to an accounting; (b)

25  identified the information to be included in the accounting; (c) determined the scope of the

26  accounting, including the cases to be included in the accounting; (d) construed the contracts

27  between Willick and Napoli Bern; (e) directed Napoli Bern to pay for the cost of the accounting;

28  (f) confirmed the appointment of Mr. Malmlund as the accountant; and (g) required all Defendants

393034.2             3

1   to cooperate with the Accountant.  There was a further hearing before the Arbitrator on January

2   27, 2018; and on the same day, the Arbitrator issued a revised version of the Interim Award dated

3   January 11, 2018.  Insofar as Napoli Bern's liability to Willick (as determined in this Award) is

4   concerned, the revisions are immaterial.[1]

5       14.     Napoli Bern did not provide the $100,000 retainer required by the Accountant or

6   execute an engagement agreement with the Accountant, as the Accountant had requested.

7   Therefore, work on the accounting did not commence, and Napoli Bern did not comply with its

8   obligations under the Interim Award.

9       15.     On March 9, 2018, Willick submitted and served a motion for terminating and

10  monetary sanctions against Napoli Bern ("Sanctions Motion").  Willick sought to have Napoli

11  Bern's answer to Willick's causes of action for an accounting and breach of contract stricken and

12  to have monetary sanctions imposed on Napoli Bern on the grounds that Napoli Bern had failed to

13  comply with the Interim Award.

14      16.     On April 28, 2018, the Arbitrator issued a tentative ruling to grant the Sanctions

15  Motion.  Shortly thereafter, counsel for the parties requested the Arbitrator to defer issuing a final

16  ruling on the Sanctions Motion pending the completion of a mediation, although they agreed that

17  the hearing on the Sanctions Motion would proceed on May 1, 2018, as scheduled.

18      17.     The hearing on the sanctions motion took place before the Arbitrator on May 1,

19  2018.  All parties appeared through their respective counsel of record.  The Arbitrator stated that

20  he intended to grant the Sanctions Motion, but, as requested, would defer issuing a formal ruling.

21  The Arbitrator also set June 16, 2018 as a date for conducting a prove-up hearing.

22      18.     The mediation was not successful.  Thereafter, Napoli Bern tendered a payment to

23  Ernst & Young in the amount of $110,000.

24

25  [1] The purposes of the Interim Award of January 27, 2018 were to make it clear that the Interim
    Award concerned only Napoli Bern's liability to Willick, and not the liability of the other
26  defendants; to confirm that the accounting was granted in response to Willick's contention that
    Napoli Bern violated an employment-related law, rule or regulation; and to order Napoli and Bern
27  to cooperate with the accountant and direct the employees at the current laws firms to provide such
28  cooperation.

393034.2                                    4
EXHIBIT 13
Page 150
FINAL AWARD ON PLAINTIFF'S CLAIMS AGAINST DEFENDANT NAPOLI BERN RIPKA &

19. A hearing was conducted on June 30, 2018 (after the parties requested a continuance of the hearing that had been scheduled for June 16, 2018). All parties appeared through their counsel. The Arbitrator denied a request by Napoli Bern to reconsider and deny the Sanctions Motion on the basis of the payment tendered to Ernst & Young, granted the Sanctions Motion, and conducted a prove-up hearing.

20. On July 3, 2018, after considering the briefs, declarations, evidence, and argument of counsel submitted in support of and in opposition to the Sanctions Motion, the Arbitrator issued an "Order re: Claimant's Motion for Terminating and Monetary Sanctions," confirming its decision to grant the Sanctions Motion in full, strike Napoli Bern's answer to Willick's causes of action for an accounting and breach of contract, enter a default against Napoli Bern on those two causes of action, and grant Willick's request for monetary sanctions. The Order also confirms that a prove-up hearing had been conducted on June 30, 2018.

21. On August 2, 2018, the Arbitrator issued a "[Tentative] Order re: Plaintiff's Motion for Entry of Default Award; Award" dated August 2, 2018, stating that Willick quantified the amounts to which Willick is entitled as damages and monetary sanctions.

22. Willick has advised the Arbitrator that, as to Napoli Bern only, Willick is willing to waive his right to recover costs except to the extent that they are included in the award of monetary sanctions in his favor, and that he is willing to waive his right to seek any recovery against Napoli Bern on any of his causes of action other than his First and Second Causes of Action (for an accounting and for breach of contract).

23. The findings stated above are intended to supersede any inconsistent statements or findings in any prior orders, rulings or awards issued by the Arbitrator in this matter.

**NOW, THEREFORE, THE ARBITRATOR HEREBY MAKES THE FOLLOWING AWARD**:

A. With respect to Willick's Complaint filed on December 12, 2014 and Napoli Bern's Answer to the Complaint, Napoli Bern's right to contest Willick's First Cause of Action for an Accounting and/or Willick's Second Cause of Action for Breach of Contract is hereby terminated,

1  its Answer to those Causes of Action is hereby stricken, and those Causes of Action are hereby

2  decided in favor of Willick and against Napoli Bern by way of default;

3          B.    On Willick's First Cause of Action, the Arbitrator finds that Willick is entitled

4  to $3,355,260.00 for his share of the fees received by Napoli Bern on cases referred to Napoli Bern

5  by Willick's Referral Sources.

6          C.    On Willick's Second Cause of Action, Willick is entitled to damages against

7  Napoli Bern in the amount of 3,355,260.00 and to prejudgment interest in the amount of

8  $724,198.53, for a total award of $4,079,458.53.

9          D.    Willick is also awarded monetary sanctions against Napoli Bern in the amount

10  of $44,198.00.

11          E.    Based on the waivers referenced in paragraph 22 above, the relief granted in

12  paragraphs A-D above is and will be the only relief granted to Willick against Napoli Bern.

13  However, nothing contained in this Final Award shall impair Willick's rights with respect to, or any

14  of his claims against, any Defendant other than Napoli Bern.  Therefore, the Arbitrator reserves

jurisdiction over Willick's claims against all Defendants other than Napoli Bern.

15

16  DATED: August 3, 2018

17                                  Hon. Richard A. Stone (Ret.)

                                Arbitrator

393034.2      6

EXHIBIT 13
Page 152

# EXHIBIT 14

EXHIBIT 14
Page 153

1 | JAMES GOLDMAN (State Bar No. 57127)
jgoldman@millerbarondess.com
2 | KEOLA R. WHITTAKER (State Bar No. 290640)
kwhittaker@millerbarondess.com
3 | MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
4 | Los Angeles, California 90067
Telephone:   (310) 552-4400
5 | Facsimile:   (310) 552-8400

6 | Attorneys for Plaintiff MARC I. WILLICK

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

| | |
|---|---|
| 11   MARC I. WILLICK, an individual, | **CASE NO. 2:15-cv-00652-AB-CE** |
| 12                 Plaintiff, | [Assigned for to Hon. Andre Birotte, Jr.; and Magistrate Judge Charles F. Eick] |
| 13            v. | **JOINT STATUS REPORT REGARDING THE ARBITRATION PROCEEDINGS** |
| 14   NAPOLI BERN RIPKA & ASSOCIATES, LLP, a purported | |
| 15   limited liability partnership; NAPOLI BERN RIPKA SHKOLNIK & | |
| 16   ASSOCIATES, LLP, a purported limited liability partnership; NAPOLI | |
| 17   BERN RIPKA SHKOLNIK, LLP, a purported limited liability partnership; | Action filed:   12/12/14 (Los Angeles County Superior Court |
| 18   NAPOLI BERN RIPKA, LLP, a purported limited liability partnership; | Trial Date:   None set |
| 19   NAPOLI KAISER BERN, LLP, a purported limited liability partnership; | |
| 20   MARC J. BERN, an individual; PAUL J. NAPOLI, an individual; and DOES 1 | |
| 21   through 50, | |
| 22                 Defendants. | |

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

1  Pursuant to the Court's Order, dated August 20, 2015, Plaintiff Marc I.
2  Willick ("Plaintiff") and Defendants Napoli Bern Ripka & Associates, LLP; Napoli
3  Bern Ripka Shkolnik & Associates, LLP; Napoli Bern Ripka Sckolnik, LLP; Napoli
4  Bern Ripka, LLP; Napoli Kaiser Bern, LLP; and Marc J. Bern (collectively,
5  "Defendants") (Plaintiff and Defendants, together, the "Parties")[1] hereby submit this
6  Joint Status Report Regarding the Arbitration Proceedings.

7  On September 15, 2015, the Parties agreed to select the Honorable Richard A.
8  Stone as the arbitrator in this matter.  On September 24, 2015, the Parties received
9  Judge Stone's fully executed Disclosure Statement.  Objections to the Disclosure
10  Statement are due on October 9, 2015.

11  It is anticipated that Judge Stone will schedule a status conference for the
12  purpose of scheduling all appropriate dates including a discovery schedule, motion
13  deadlines, and a date for the arbitration of this matter.

14
15
16
17
18
19
20
21
22
23
24
25
26

27  [1] Defendant Paul J. Napoli has received a copy of this Status Report but has thus far
28  not indicated whether he has any objections it.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 · LOS ANGELES, CALIFORNIA 90067
TEL (310) 552-4400  FAX (310) 552-8400

1   DATED: October 8, 2015          MILLER BARONDESS, LLP

2

3

4                                   By:      /s/ James Goldman
5                                          JAMES GOLDMAN
                                           Attorneys for Plaintiff MARC I.
6                                          WILLICK

7   DATED: October 8, 2015          ANDREWS, LAGASSE, BRANCH & BELL,
                                    LLP
8

9

10

11                                  By:      /s/ Kelly D. Folger
                                           KELLY D. FOLGER
12                                         TRACI S. LAGASSE
                                           Attorneys for Defendant MARC J. BERN
13

14  DATED: October 8, 2015          YEE & BELILOVE

15

16

17                                  By:      /s/ Steve R. Belilove
                                           STEVE R. BELILOVE
18                                         Attorneys for Defendants NAPOLI
                                           BERN RIPKA & ASSOCIATES, LLP;
19                                         NAPOLI BERN RIPKA SHKOLNIK &
                                           ASSOCIATES, LLP; NAPOLI BERN
20                                         RIPKA SHKOLNIK, LLP; NAPOLI
                                           BERN RIPKA LLP; NAPOLI KAISER
21                                         BERN LLP

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000, LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**ECF**    Civil ▾    Criminal ▾    Query    Reports ▾    Utilities ▾    Search

## Miscellaneous Filings (Other Documents)

:15-cv-00652-AB-E Marc I Willick v. Napoli Bern Ripka & Associates, LLP et al **CASE CLOSED on** 8/20/2015

ACCO,(Ex), CLOSED ,DISCOVERY,MANADR,STAYED

## UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA

otice of Electronic Filing

he following transaction was entered by Goldman, James on 10/8/2015 at 4:21 PM PDT and filed on 0/8/2015
**ase Name:**        Marc I Willick v. Napoli Bern Ripka & Associates, LLP et al
**ase Number:**      2:15-cv-00652-AB-E
iler:               Marc I Willick
**VARNING: CASE CLOSED on 08/20/2015**
**ocument Number:** 40

**ocket Text:**
TATUS REPORT *JOINTLY* filed by Plaintiff Marc I Willick. (Goldman, James)

**:15-cv-00652-AB-E Notice has been electronically mailed to:**

avid M Wright     dwright@fwcllp.com

ames Lewis Goldman     jgoldman@millerbarondess.com, kwhittaker@millerbarondess.com

elly Drew Folger     kfolger@albblaw.com, mchavez@albblaw.com

teve R Belilove     srb@yeelaw.com

teven R Yee     sry@yeelaw.com

odd E Croutch     tcroutch@fwcllp.com

raci S Lagasse     tlagasse@albblaw.com, mchavez@albblaw.com

**:15-cv-00652-AB-E Notice has been delivered by First Class U. S. Mail or by other means <u>BY</u> <u>HE FILER</u> to :**

he following document(s) are associated with this transaction:

**ocument description:** Main Document
**riginal filename:** C:\fakepath\Joint Status Report.pdf

EXHIBIT 14
Page 157