1  STEPHEN J. ERIGERO (SBN 121616)
   stephen.erigero@rmkb.com
2  TAHEREH MAHMOUDIAN (SBN 217120)
   tahereh.mahmoudian@rmkb.com
3  ROPERS, MAJESKI, KOHN & BENTLEY
   445 South Figueroa Street, Suite 3000
4  Los Angeles, CA  90071
   Telephone: (213) 312-2000
5  Facsimile:  (213) 312-2001

6  Attorneys for Defendants NAPOLI BERN RIPKA &
   ASSOCIATES, LLP; NAPOLI BERN RIPKA
7  SHKOLNIK & ASSOCIATES, LLP; NAPOLI
   BERN RIPKA SHKOLNIK, LLP; NAPOLI BERN
8  RIPKA, LLP; NAPOLI KAISER BERN, LLP

9               UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                    WESTERN DIVISION

12

| | |
|---|---|
| 13  MARC I. WILLICK, an individual, | Case No.  CV 15-00652-AB (Ex) |
| 14                    Plaintiff, | **NOTICE OF MOTION AND MOTION FOR AN ORDER VACATING ARBITRATION AWARD AGAINST DEFENDANT NAPOLI BERN RIPKA & ASSOCIATES, LLP; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 15  v. | |
| 16  NAPOLI BERN RIPKA & ASSOCIATES, LLP, a purported | |
| 17  limited liability partnership; NAPOLI BERN RIPKA SHKOLNIK & | |
| 18  ASSOCIATES, LLP, a purported limited liability partnership; NAPOLI | |
| 19  BERN RIPKA SHKOLNIK, LLP, a purported limited liability partnership; | *[Filed concurrently with the Declarations of Tahereh Mahmoudian and Salvatore Badala, and Proposed Order]* |
| 20  NAPOLI BERN RIPKA, LLP, a purported limited liability partnership; | |
| 21  NAPOLI KAISER BERN, LLP, a purported limited liability partnership; | |
| 22  MARC J. BERN, an individual; PAUL J. NAPOLI, an individual; and DOES 1 | Date:      October 19, 2018 |
| 23  through 50, | Time:      10:00 a.m.<br>Crtrm:     7B |
| 24                    Defendants. | Judge:     Hon. André Birotte, Jr. |
| 25 | |

26  / / /

27  / / /

28  / / /

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on October 19, 2018, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7B of the above-entitled court, located at 350 West First Street, Los Angeles, California 90012, defendant Napoli Bern Ripka & Associates, LLP ("NBRA") will and hereby does move for an order vacating an August 3, 2018 arbitration award rendered in the arbitration proceeding relating to the above-captioned action. This motion is made pursuant to the Federal Arbitration Act section 10 (9 U.S.C. § 10) on the ground that the arbitrator exceeded his powers in rendering a default arbitration award against NBRA and on the related ground that, after rendering a default against NBRA, the arbitrator refused to hear or consider any evidence from NBRA.

This motion is made following a conference of counsel pursuant to Local Rule 7-3 which took place on August 28, 2018.

This motion is based on this Notice of Motion and the attached Memorandum of Points and Authorities, the accompanying Declaration of Tahereh Mahmoudian and Declaration of Salvatore Badala, the pleadings and papers on file herein, and on such other evidence as may be presented at the time of the hearing of the motion.


Dated: September 12, 2018          ROPERS, MAJESKI, KOHN & BENTLEY


By:  /s/ *Stephen J. Erigero*
STEPHEN J. ERIGERO
TAHEREH MAHMOUDIAN
Attorneys for Defendants
NAPOLI BERN RIPKA & ASSOCIATES,
LLP; NAPOLI BERN RIPKA SHKOLNIK
& ASSOCIATES, LLP; NAPOLI BERN
RIPKA SHKOLNIK, LLP; NAPOLI
BERN RIPKA, LLP; NAPOLI KAISER
BERN, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND .................................................................................. 1

      A.   The Proceedings Resulting in the Default Arbitration Award
           Against NBRA ........................................................................... 1

      B.   The Default Arbitration Award Against NBRA ............................... 8

      C.   Plaintiff's Pending Motion in the Arbitration Proceeding to
           Amend the Arbitration Award .................................................... 9

      D.   Plaintiff's Pending Motion in the District Court to Confirm the
           Arbitration Award ................................................................... 10

      E.   NBRA'S Present Motion to Vacate the Arbitration Award ............. 10

III.  THE ARBITRATION AWARD SHOULD BE VACATED
      BECAUSE THE ARBITRATOR EXCEEDED HIS POWERS IN
      RENDERING A DEFAULT ARBITRATION AWARD .......................... 10

IV.   CONCLUSION ................................................................................ 16

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Biller v. Toyota Motor Corp.,*
    668 F. 3d 655 (9th Cir. 2012)...................................................................... 11

*Klauber Bros., Inc. v. Russell-Newman, Inc.,*
    No. 11 Civ. 4985 PGG, 2013 WL 1245456 (S.D.N.Y. Mar. 26, 2013) .............. 2

*Kyocera Corp. v. Prudential-Bache Trade Services, Inc.,*
    341 F. 3d 987 (9th Cir. 2003)...................................................................... 11

*Tobin v. Gluck,*
    137 F. Supp. 3d 278 (E.D.N.Y. 2015)............................................................ 2

*Zaborowski v. MHN Government Services, Inc.,*
    936 F. Supp. 2d 1145 (N.D. Cal. 2013) ........................................................ 15

**OTHER CASES**

*1301 Properties Owner LP v. Abelson,*
    51 Misc. 3d 1207(A) (N.Y. Sup. 2016) .......................................................... 2

*Alexander v. Blue Cross of California,*
    88 Cal. App. 4th 1082 (2001)...................................................................... 13

*Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.,*
    44 Cal. 4th 528 (2008)................................................................................ 13

*Union Ins. Co. v. Central Trust Co.,*
    157 N.Y. 633 (1899).................................................................................... 2

**FEDERAL STATUTES AND RULES**

9 U.S.C. § 10(a)(3) ........................................................................................ 16

9 U.S.C. § 10(a)(4) ................................................................................... 10, 11

9 U.S.C. § 12 ................................................................................................ 11

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

OTHER STATUTES AND RULES

Cal. Code of Civil Procedure § 1283.05 ......................................................... 12, 13

Cal. Code of Civil Procedure § 1283.1(a) ........................................................ 12

Cal. Code of Civil Procedure § 2023.030 ........................................................ 11

New York Partnership Law § 26 ..................................................................... 2

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

- iii -
MOTION FOR ORDER VACATING
ARBITRATION AWARD

<div style="writing-mode: vertical">Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles</div>

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is an action between plaintiff, a California attorney, and defendant Napoli Bern Ripka & Associates, LLP ("NBRA"), a New York law firm, and several other entity and individual defendants.  The case was commenced in the Los Angeles County Superior Court and removed to the District Court.  The District Court ordered the matter to arbitration pursuant to an arbitration provision in a contract between plaintiff and NBRA.

Because of a refusal by the insurer, Evanston Insurance Co., to pay a $100,000 retainer fee to an accountant to perform an accounting, the arbitrator entered NBRA's default in the arbitration proceeding.[1]  The arbitrator then held a "prove up" hearing at which NBRA was not permitted to introduce evidence, cross-examine plaintiff, or otherwise challenge plaintiff's submissions.  On or about August 3, 2018, the arbitrator issued a completely irrational default arbitration award against NBRA in the amount of approximately $4 million.  Such an award would mean that NBRA collected approximately $40,000,000 in attorneys' fees on the cases in dispute and settlements totaled approximately $120,000,000.  Such numbers are completely irrational and no facts support such an award.

By its present motion, NBRA seeks an order vacating the arbitration award.  NBRA's motion should be granted because the arbitrator exceeded his powers in issuing the arbitration award predicated on his entry of a default against NBRA.

## II.    BACKGROUND

### A.    The Proceedings Resulting in the Default Arbitration Award Against NBRA

On December 12, 2014, plaintiff Marc I. Willick ("Plaintiff") filed a complaint in the Los Angeles County Superior Court against the following

---

[1] Declaration of Salvatore Badala, Exs. H-J.

defendants:

- Napoli Bern Ripka & Associates, LLP ("NBRA");[2]
- Napoli Bern Ripka Shkolnik & Associates, LLP;
- Napoli Bern Ripka Shkolnik, LLP;[3]
- Napoli Bern Ripka, LLP;
- Napoli Kaiser Bern, LLP;
- Marc J. Bern ("Bern"); and
- Paul J. Napoli ("Napoli").[4]

Plaintiff's complaint alleges causes of action against each of the Defendants for (1) accounting; (2) breach of contract; (3) fraud; (4) violation of Business & Professions Code § 17200; and (5) negligent misrepresentation.  Plaintiff's claims arise from the essential contention that defendant Napoli Bern Ripka & Associates,

---

[2] NBRA is the only contracting entity with Plaintiff.  The other entities and individuals did not contract with Plaintiff, and therefore, they are not responsible for the promises made by NBRA.  (*See, e.g., Union Ins. Co. v. Central Trust Co.*, 157 N.Y. 633 (1899) [stating that "[e]ach party to the submission agreement, which was quadripartite in character, was bound only to the extent of the promises, express or implied, made by them respectively."]; *Klauber Bros., Inc. v. Russell-Newman, Inc.*, No. 11 Civ. 4985 PGG, 2013 WL 1245456 (S.D.N.Y. Mar. 26, 2013) [same]; *Tobin v. Gluck*, 137 F. Supp. 3d 278 (E.D.N.Y. 2015).)

[3] This entity did not even handle any asbestos matters.

[4] Pursuant to New York Partnership Law section 26, Messrs. Bern and Napoli cannot be held personally liable for any of NBRA's payment obligations. As relevant here, section 26(b) provides:

> [N]o partner of a partnership which is a registered limited liability partnership is liable or accountable, directly or indirectly (including by way of indemnification, contribution or otherwise), for any debts, obligations or liabilities of, or chargeable to, the registered limited liability partnership . . . solely by reason of being such a partner . . . .

Consistent with the purpose of Partnership Law section 26(b), courts have repeatedly dismissed breach of contract claims against individual partners of limited liability partnerships.  (*See, e.g., 1301 Properties Owner LP v. Abelson*, 51 Misc. 3d 1207(A) (N.Y. Sup. 2016) [dismissing contract claims against individual partners of limited liability partnership].)

- 2 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

LLP ("NBRA") breached its obligations under two contracts that it entered into with Plaintiff.  These two contracts, which were attached as exhibits to the complaint, are a Co-Counsel Agreement for California Asbestos Personal Injury Claims dated March 17, 2011 and an Employment Agreement dated May 20, 2011.[5]

On January 28, 2015, Defendants removed the case to federal court.[6]  The Entity Defendants subsequently filed a motion to compel arbitration of this matter pursuant to an arbitration clause in the May 2011 contract.  The arbitration clause provides that:

> Any and all disputes arising from or under this Agreement
> or breach thereof including termination and/or
> discrimination, shall be settled by arbitration in
> accordance with the rules of the American Arbitration
> Association then in effect.  Judgment upon the award
> rendered may be entered in any Court having jurisdiction
> thereof.  Both parties waive any and all rights to bring a
> case in Court and waive any and all right to a jury trial.
> The attorney has no right to assign any rights, title or
> interest to arbitrate this agreement to any other person,
> corporation or other party.  Any and all arbitration
> benefits herein are limited to the attorney and law firm.

(5/2011 Contract, ¶ 5.1.)[7]  The motion to compel arbitration was granted by the District Court on August 20, 2015.[8]

---

[5] A copy of the complaint is included as Exhibit A to the Notice of Removal filed on January 28, 2015.  (Dkt. No. 1-1, pp. 2-27.)

[6] Defendants' Notice to Federal Court of Removal of Civil Action from State Court.  (Dkt. No. 1, pp. 1-10.)

[7] Declaration of Tahereh Mahmoudian ("Mahmoudian Decl.") ¶ 3, Ex. A.

[8] Order Granting Defendants' Petition to Compel Arbitration.  (Dkt. No. 39.)

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The parties selected the Honorable Richard A. Stone (Ret.) to serve as the arbitrator in connection with this matter (the "Arbitrator").[9] On or about January 27, 2018, the Arbitrator issued an Interim Award Re Accounting ("Interim Award"). By the Interim Award, the Arbitrator ruled in favor of Plaintiff on his first cause of action for an accounting, but only with respect to defendant NBRA. The Interim Award appointed Bjorn L. Malmlund of Ernst & Young LLP as the accountant to conduct the accounting (the "Accountant"). The Interim Award also directed NBRA to bear the costs of the accounting, which included paying a $100,000 retainer fee to the Accountant.[10]

After the Interim Award was finalized, issues arose with respect to the scope of the Accountant's engagement. Notably, there were serious questions concerning what information regarding its clients NBRA, as a law firm, could properly divulge to the Accountant. The Accountant's engagement agreement required NBRA to disclose privileged communications with its clients and privileged personal data concerning its clients to the Accountant. NBRA attempted to address these issues by making suggested revisions to the Accountant's engagement agreement.[11] As mentioned above, because the insurer, Evanston Insurance Co. ("Evanston"), refused to pay a $100,000 retainer fee to the Accountant, the accounting was not performed. Evanston was solely at fault for this issue, not NBRA.

Apparently because of frustration with Evanston's inaction with regard to paying the Accountant's retainer, on about March 9, 2018, Plaintiff filed a Motion for Terminating and Monetary Sanctions against NBRA in the arbitration proceeding ("Motion for Sanctions"). Plaintiff's Motion for Sanctions sought an interim order or award imposing monetary sanctions against NBRA, striking

---

[9] Mahmoudian Decl. ¶ 4.

[10] Mahmoudian Decl. ¶ 5.

[11] Mahmoudian Decl. ¶ 6.

NBRA's answer to Plaintiff's complaint, entering default against NBRA, and providing for a "prove-up" hearing.[12]

The Arbitrator issued a tentative ruling granting the Motion for Sanctions. Thereafter, on May 1, 2018, the Arbitrator conducted a hearing on the Motion for Sanctions. At the hearing, the parties requested that the Arbitrator refrain from issuing a final order or award on the motion until after they attempted to settle the case at a mediation. On June 14, 2018, the parties participated in a mediation but were not able to resolve the case.[13]

On June 15, 2018, the day after the mediation, counsel for NBRA informed the Arbitrator that "a payment of $110,000 to Ernst & Young ($100,000 retainer fee and $10,000 to expedite the process) will be completed in the next few days." On June 20, 2018, counsel for NBRA informed the Arbitrator that Ernest & Young had received the $110,000 payment.[14]

Although the Accountant's retainer fee had been paid, the Arbitrator conducted a default prove-up hearing on June 30, 2018, only about three and a half months after Plaintiff's motion was filed.[15] At the time of the prove-up hearing, counsel for NBRA requested, but was denied, the opportunity to put on any evidence or to challenge the evidence or submissions made by Plaintiff. Illustrative of this is the following request made by NBRA's attorney at the prove-up hearing:

> I would urge the [Arbitrator] – certainly the [Arbitrator]
> could strike the affirmative defenses or something a little
> less drastic such there would be damages, a prove-up that
> would allow [NBRA] to at least raise some evidence on

[12] Mahmoudian Decl. ¶ 7.

[13] Mahmoudian Decl. ¶ 8.

[14] Mahmoudian Decl. ¶ 9.

[15] Mahmoudian Decl. ¶ 10.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1   damages, or at least cross-examine the evidence that's

2   proffered today….

3        I would ask the [Arbitrator] to, in gathering all the

4   evidence today, to perhaps take under submission to

5   perhaps allow the defense to submit some contrary

6   evidence on damages or at least critique some of the

7   proffered evidence specifically.  So I would ask for that

8   opportunity.  The [Arbitrator] can always refuse to

9   consider, determine that that would be inappropriate, but I

10  would ask for that opportunity prior to the issuance of a

11  judgment, based on the tentative ruling [granting the

12  Motion for Sanctions].

13  (6/30/18 Transcript, pp. 10:23-11:20.)[16]  After discussing NBRA's attorney's

14  request, the Arbitrator concluded:

15  So my tentative will stand.  With regard to the

16  presentation of evidence, notwithstanding, I'm sure I

17  would love to hear from [NBRA's attorney], and I have

18  no doubt it would be interesting reading.  The party in

19  default isn't entitled to be heard.  They've had years to be

20  heard, and the firm has chosen not to be.  So under the

21  circumstances, I'm not now at this point in time going to

22  allow them the benefit of something they could have

23  taken full advantage over the course of the last few

24  years….  That being said, I did read through [Plaintiff's

25  attorney's] stuff….

26

27

28

[16] Mahmoudian Decl. ¶¶ 10 & 11, Ex. B.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1  (6/30/18 Transcript, p. 19:4-15.)[17]  Plaintiff's attorney "stuff" that the Arbitrator

2  read was apparently a declaration of Plaintiff and other papers that Plaintiff's

3  attorney submitted to the arbitrator a few days before the prove-up hearing.  There

4  was no testimony of Plaintiff or any other witnesses at the time of the hearing.[18]

5  Significantly, moreover, there were no motions to compel discovery responses from

6  NBRA calendared for hearing when the Arbitrator entered a default against NBRA

7  and conducted the prove-up hearing.[19]  Also, the Arbitrator was incorrect that

8  NBRA had years to be heard.  Mr. Napoli was diagnosed with Acute Leukemia in

9  May 2014, and his recovery still continues today.  In addition, during the time of

10  Mr. Napoli's diagnosis, he was engaged in a partnership dispute with Mr. Bern,

11  which still continues to date.  Unfortunately, these events could not be controlled

12  and have impacted these proceedings.

13      On or about July 3, 2018, the Arbitrator issued an "Order Re: Claimant's

14  Motion for Terminating and Monetary Sanctions" granting Plaintiff's Motion for

15  Sanctions against NBRA.  This Order concludes:

16      Napoli Ripka Bern & Associates, LLP's answer is

17      stricken, and its default is entered for [the Accounting and

18      Breach of Contract] causes of action.

19        A prove-up hearing on the Accounting and Breach

20      of Contract causes of action was held on June 30, 2018, at

21      9:00 a.m., at the Arbitrator's office.  At that time, Plaintiff

22      presented his evidence and argument to prove up all of his

23      claims against Napoli Ripka Bern & Associates, LLP.

24      The prove up paperwork has been submitted to the

25

26  [17] Mahmoudian Decl. ¶ 10, Ex. B.

27  [18] Mahmoudian Decl. ¶¶ 10 & 11, Ex. B.

28  [19] Mahmoudian Decl. ¶ 13.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

MOTION FOR ORDER VACATING
ARBITRATION AWARD

1   Arbitrator and will be the subject of a later ruling and
2   award….
3   (Arbitrator's 7/3/18 Order, p. 17:1-7.)[20]
4   **B.  The Default Arbitration Award Against NBRA**
5   On or about August 3, 2018, the Arbitrator issued a "Final Award on
6   Plaintiff's Claims Against Defendant Napoli Bern Ripka & Associates, LLP" (the
7   "Arbitration Award"). The Arbitration Award provides, in part:
8   A.     With respect to Willick's Complaint filed on
9   December 12, 2014 and [NBRA's] Answer to the
10   Complaint, [NBRA's] right to contest Willick's First
11   Cause of Action for an Accounting and/or Willick's
12   Second Cause of Action for Breach of Contract is hereby
13   terminated, its Answer to those Causes of Action is
14   hereby stricken, and those Causes of Action are hereby
15   decided in favor of Willick and against [NBRA] by way
16   of default;
17   B.     On Willick's First Cause of Action, the Arbitrator
18   finds that Willick is entitled to $3,355,260.00 for his share
19   of the fees received by [NBRA] on cases referred to
20   [NBRA] by Willick's Referral Sources.
21   C.     On Willick's Second Cause of Action, Willick is
22   entitled to damages against [NBRA] in the amount of
23   3,355,260.00 and to prejudgment interest in the amount of
24   $724,198.53, for a total award of $4,079,458.53.
25   D.     Willick is also awarded monetary sanctions against
26   [NBRA] in the amount of $44,198.00.

---

[20] Mahmoudian Decl. ¶ 12, Ex. C.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

E.      Based on the waivers referenced in paragraph 22 above, the relief granted in paragraphs A-D above is and will be the only relief granted to Willick against [NBRA]. However, nothing contained in this Final Award shall impair Willick's rights with respect to, or any of his claims against, any Defendant other than [NBRA]. Therefore, the Arbitrator reserves jurisdiction over Willick's claims against all Defendants other than [NBRA].

(Arbitration Award, pp. 5:25-6:15.)[21]  Such an award would mean that NBRA collected approximately $40,000,000 in attorneys' fees on the cases in dispute and settlements totaled approximately $120,000,000.  Such numbers are completely irrational and no facts support such an award.

### C.      Plaintiff's Pending Motion in the Arbitration Proceeding to Amend the Arbitration Award

The Arbitration Award only concerned Plaintiff's claims against NBRA, one of the seven original Defendants in this matter.  The arbitration with respect to the other six Defendants is still pending.  On or about August 10, 2018, Plaintiff served a motion in connection with the pending arbitration proceeding requesting that the Arbitrator amend the Arbitration Award with respect to NBRA to add the other six Defendants as alter egos of NBRA.  As of the time of this writing, Plaintiff's motion to amend the Arbitration Award is scheduled to be heard by the Arbitrator on September 21, 2018.[22]

---

[21] Mahmoudian Decl. ¶ 14, Ex. D.

[22] Mahmoudian Decl. ¶ 15.

### D. Plaintiff's Pending Motion in the District Court to Confirm the Arbitration Award

On August 17, 2018, a week after filing its motion to Amend the Arbitration Award in the arbitration proceeding, Plaintiff filed a motion in the District Court seeking to have the Court confirm the Arbitration Award pursuant to section 9 of the Federal Arbitration Act ("FAA") (9 U.S.C. § 9).[23]  NBRA has opposed Plaintiff's motion to confirm the Arbitration Award.[24]  As of the time of this writing, Plaintiff's motion to confirm the Arbitration Award is scheduled to be heard by the Court on September 14, 2018.

### E. NBRA'S Present Motion to Vacate the Arbitration Award

NBRA is now bringing the present motion to vacate the Arbitration Award pursuant to section 10 of the FAA (9 U.S.C. § 10).  NBRA's motion should be granted and the Arbitration Award vacated because the Arbitrator exceeded his powers in issuing a default award against NBRA.

### III. THE ARBITRATION AWARD SHOULD BE VACATED BECAUSE THE ARBITRATOR EXCEEDED HIS POWERS IN RENDERING A DEFAULT ARBITRATION AWARD

Sections 10 and 11 of the Federal Arbitration Act ("FAA") state the grounds on which the Court may vacate, modify, or correct an arbitration award.  Pertinent to the present circumstances, Section 10 provides:

> (a) In any of the following cases the United States court … may make an order vacating the award upon the application of any party to the arbitration– …
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and

---

[23] Dkt. No. 134.

[24] Dkt. No. 136.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

1    definite award upon the subject matter submitted was not

2    made.

3    (9 U.S.C. § 10(a)(4).)  "Notice of a motion to vacate, modify, or correct an award

4    must be served upon the adverse party or his attorney within three months after the

5    award is filed or delivered.  (9 U.S.C. § 12.)

6    The Ninth Circuit has "held that arbitrators 'exceed their powers' … not

7    when they merely interpret or apply the governing law incorrectly, but when the

8    award is 'completely irrational,' [citation], or exhibits a 'manifest disregard of law,'

9    [citation]."  (*Kyocera Corp. v. Prudential-Bache Trade Services, Inc*., 341 F. 3d

10   987, 997 (9th Cir. 2003).)  An arbitration award is completely irrational "where the

11   arbitration decision fails to draw its essence from the agreement."  "An arbitration

12   award draws its essence from the agreement if the award is derived from the

13   agreement, viewed in light of the agreement's language and context, as well as

14   other indications of the parties intentions."  (*Biller v. Toyota Motor Corp.,* 668 F.

15   3d 655, 665 (9th Cir. 2012) [citations and quotation marks omitted].)  To vacate an

16   arbitration award on the ground of manifest disregard of the law, "[i]t must be clear

17   from the record that the arbitrators recognized the applicable law and then ignored

18   it."  (*Id*. [citations and quotation marks omitted].)

19   As justification for striking NBRA's answer and rendering a default award

20   against it, the Arbitrator in connection with the present matter said that

21   "[California] Code of Civil Procedure Section 2023.030 authorizes a trial court to

22   impose monetary sanctions, issue sanctions, evidence sanctions, or terminating

23   sanctions against 'anyone engaging in conduct that is a misuse of the discovery

24   process.'"  (7/3/18 Arb. Order, p. 8:10-12 [citation omitted].)[25]  The Arbitrator

25   further asserted that:

26

27

28   [25] Mahmoudian Decl. ¶ 12, Ex. C.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

> [California] Code of Civil Procedure section 1283.05(b)
> provides that arbitrators "have power, in addition to the
> power of determining the merits of the arbitration, to
> enforce the rights, remedies, procedures, duties, liabilities,
> and obligations of discovery by the imposition of the
> same terms, conditions, consequences, liabilities,
> sanctions, and penalties as can be or may be imposed in
> like circumstances in a civil action by a superior court of
> this state under the provisions of this code, except the
> power to order the arrest or imprisonment of a person."

(7/3/18 Arb. Order, n. 4, p. 8:22-25.)[26]  Based on such authorities, the Arbitrator concluded that he had the power to enforce discovery through sanctions including by imposing a terminating sanction and rendering a judgment of default.  (7/3/18 Arb. Order, p. 9:8-9.)[27]

The Arbitrator did not have such power.  California Code of Civil Procedure section 1283.05 relied on by the Arbitrator is part of the California Arbitration Act ("CAA").  This matter, however, is governed by the FAA not the CAA.[28]  But even if this matter were governed by the CAA, section 1283.05 relied on by the arbitrator would not apply.  Section 1283.1(a) of the CAA states that the provisions of section 1283.05 are automatically incorporated into agreements to arbitrate disputes resulting from the injury or death of a person caused by the wrongful act or neglect of another.  The present matter, however, does not involve such a dispute.  With regard to all other types of disputes, section 1283.1(b) provides:  "Only if the

---

[26] Mahmoudian Decl. ¶ 12, Ex. C.

[27] Mahmoudian Decl. ¶ 12, Ex. C.

[28] See, e.g., the Court's Order Granting Defendants' Petition to Compel Arbitration, which applied the FAA.  (Dkt. No. 39, pp. 3-4.)  Plaintiff also brought his motion to confirm the Arbitration Award pursuant to the FAA.  (Dkt. No. 134.)

parties by their agreement so provide, may the provisions of Section 1283.05 be incorporated into, made a part of, or made applicable to, any other arbitration agreement." As can be seen from the arbitration agreement at issue here quoted verbatim above, section 1283.05 was not incorporated into the arbitration agreement. Thus, the Arbitrator had no power pursuant to section 1283.05 to impose a terminating sanction as he claimed.[29]

In addition to erroneously finding authority to impose terminating sanctions in CAA section 1283.05, the Arbitrator said:

> American Arbitration Association Rule R-58, applicable to this dispute in light of the parties' arbitration agreement specifically referencing same, provides: "The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with these rules or an order of the arbitrator."

(7/3/18 Arb. Order, p. 8:13-16.)[30] The Arbitrator was correct in recognizing that American Arbitration Association Rules apply. But he was incorrect in concluding that these rules authorized him to enter a default award. The Arbitrator only quoted one sentence from Rule 58. Rule 58 in its entirety is as follows:

---

[29] In his discussion of an arbitrator's power to impose discovery sanctions, the Arbitrator cited two cases, *Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.,* 44 Cal. 4th 528 (2008) and *Alexander v. Blue Cross of California,* 88 Cal. App. 4th 1082 (2001). The *Berglund* court said: "Discovery in arbitration is generally limited. [citing *Alexander* at p. 1088.] Sections 1283.1 and 1283.05, however, grant arbitrators authority over discovery in certain arbitration proceedings. Section 1283.1's subdivision (a) provides that section 1283.05 is incorporated into and made a part of every **agreement to arbitrate any dispute arising out of a claim for wrongful death or for personal injury**." (*Berglund,* 44 Cal. 4th at 534-535.) The Arbitrator did not cite this language from *Berglund* in asserting that he had the authority to impose terminating sanctions in the present, non-personal injury case. He cited some other language from *Berglund* that did not make clear that section 1283.05 did not automatically apply (i.e., had to be expressly incorporated into the arbitration agreement) if the claims subject to arbitration were not wrongful death or personal injury claims.

[30] Mahmoudian Decl. ¶ 12, Ex. C.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

(a) The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these rules or with an order of the arbitrator.  In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award.  **The arbitrator may not enter a default award as a sanction.**

(b) The arbitrator must provide a party that is subject to a sanction request with the opportunity to respond prior to making any determination regarding the sanctions application.

(American Arbitration Association ("AAA") R-58 [emphasis added].)[31]  This needs little explanation.  The AAA Rules expressly state that "[t]he arbitrator may not enter a default award as a sanction."

To avoid the prohibition on default awards, Plaintiff contends that the parties agreed to follow the rules of ADR Services rather than the AAA rules.  Arbitration Management Orders ("AMO") issued by the Arbitrator do make reference to the applicability of ADR Services rules in some circumstances.  A December 23, 2015 AMO states, in pertinent part:

The arbitration shall be conducted according to ADR Services' Arbitration rules **and** the terms of the parties' arbitration agreement.  All motions, including motions for summary judgment or summary adjudication, if filed,

---

[31] Mahmoudian Decl. ¶ 17, Ex. E.

shall be governed by the time and procedural

requirements of the Code of Civil Procedure unless

counsel stipulate otherwise….

(12/23/15 AMO, pp. 2-3 [emphasis added].)[32]  A January 21, 2016 AMO states:

All motions, including motions for summary judgment or

summary adjudication, if filed, shall be governed by **the**

**time and procedural requirements** of the Code of Civil

Procedure and the ADR Rules, unless counsel stipulate

otherwise.  Dispositive motions do not require leave of

the arbitrator before being filed.  All discovery and expert

cut-off dates will be per Code.

(1/21/16 AMO, p. 2 [emphasis added].)[33]

Taken together, these AMOs reflect that procedural matters would be

governed by ADR Services rules and the California Code of Civil Procedure but

that the terms of the parties' arbitration agreement were applicable to non-

procedural matters.[34]  Recognizing that the parties' arbitration agreement was

applicable despite the procedural rules makes sense because arbitration is a matter

of contract.  (*See, e.g.*, *Zaborowski v. MHN Government Services, Inc.,* 936 F.

Supp. 2d 1145, 1151 (N.D. Cal. 2013) [it is a "fundamental principle that

arbitration is a matter of contract, and therefore the Court must place arbitration

agreements on an equal footing with other contracts and enforce them according to

their terms"] [internal quotation marks omitted] [citing *AT & T Mobility LLC v.*

---

[32] Mahmoudian Decl. ¶ 18, Ex. F.

[33] Mahmoudian Decl. ¶ 19, Ex. G.

[34] The Arbitrator apparently wanted to use California and ADR Services procedural rules because he is a former California Superior Court Judge who at the time of the submission of this matter to arbitration was associated with ADR Services, although he has subsequently left ADR Services and is now associated with Benchmark Resolution Group.  (Mahmoudian Decl. ¶ 4.)

MOTION FOR ORDER VACATING
ARBITRATION AWARD

*Concepcion,* ⸻ U.S. ⸻, 131 S. Ct. 1740, 1745-466 (2011)].) Here, the arbitration agreement between Plaintiff and NBRA expressly incorporated the AAA rules, which the Arbitrator expressly acknowledged were applicable at the time that he granted Plaintiff's Motion for Terminating Sanctions.[35] The AAA rules expressly prohibit an arbitrator from entering a party's default as a sanction. Thus, the Arbitrator's entry of NBRA's default in the arbitration proceeding was in excess of his powers derived from the parties' arbitration agreement.

In addition to authorizing the District Court to vacate an arbitration where arbitrators exceed their powers, section 10 of the FAA authorizes the Court to vacate an award "where the arbitrators were guilty of misconduct … in refusing to hear evidence pertinent and material to the controversy." (9 U.S.C. § 10(a)(3).) Here, hand in glove with entering a default against NBRA in excess of his powers, the Arbitrator refused to consider any evidence from NBRA before rendering his default Award against NBRA, and even refused to allow NBRA to challenge the submissions and argument made on behalf of Plaintiff at the default prove-up hearing.

## IV.   CONCLUSION

The Arbitration Award at issue here resulted from the Arbitrator imposing a terminating sanction against NBRA, striking its answer, entering its default, and denying it the opportunity to put on any evidence or to even cross-examine Plaintiff or challenge in any way the submissions and argument made on behalf of Plaintiff at the default prove-up hearing. The Arbitrator did not have the authority to impose

/ / /

/ / /

---

[35] In his order granting the Motion for Sanctions, the Arbitrator stated: "American Arbitration Association Rule R-58 [is] applicable to this dispute in light of the parties' arbitration agreement specifically referencing same…." (Order Re: Claimant's Motion for Terminating and Monetary Sanctions, p. 8:13-14, Mahmoudian Decl. ¶ 12, Ex. C.)

1  a terminating sanction against NBRA and to enter its default.  Accordingly, the

2  Arbitration Award predicated on such grounds was made in excess of the

3  Arbitrator's powers and should be vacated.

4

5  Dated:  September 12, 2018            ROPERS, MAJESKI, KOHN & BENTLEY

6

7                                       By:  /s/ Stephen J. Erigero

8                                          STEPHEN J. ERIGERO
                                           TAHEREH MAHMOUDIAN

9                                          Attorneys for Defendants
                                           NAPOLI BERN RIPKA & ASSOCIATES,

10                                         LLP; NAPOLI BERN RIPKA SHKOLNIK
                                           & ASSOCIATES, LLP; NAPOLI BERN

11                                         RIPKA SHKOLNIK, LLP; NAPOLI
                                           BERN RIPKA LLP; NAPOLI KAISER

12                                         BERN, LLP

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

MOTION FOR ORDER VACATING
ARBITRATION AWARD