STEPHEN J. ERIGERO (SBN 121616)
TAHEREH MAHMOUDIAN (SBN 217120)
ROPERS, MAJESKI, KOHN & BENTLEY
445 South Figueroa Street, Suite 3000
Los Angeles, CA 90071
Telephone: (213) 312-2000
Facsimile: (213) 312-2001
Email: stephen.erigero@rmkb.com
tahereh.mahmoudian@rmkb.com

Attorneys for Defendants NAPOLI BERN RIPKA & ASSOCIATES, LLP; NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES, LLP; NAPOLI BERN RIPKA SHKOLNIK, LLP; NAPOLI BERN RIPKA, LLP; NAPOLI KAISER BERN, LLP

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MARC I. WILLICK, an individual,

Plaintiff,

v.

NAPOLI BERN RIPKA & ASSOCIATES, LLP, a purported limited liability partnership; NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES, LLP, a purported limited liability partnership; NAPOLI BERN RIPKA SHKOLNIK, LLP, a purported limited liability partnership; NAPOLI BERN RIPKA, LLP, a purported limited liability partnership; NAPOLI KAISER BERN, LLP, a purported limited liability partnership; MARC J. BERN, an individual; PAUL J. NAPOLI, an individual; and DOES 1 through 50,

Defendants.

Case No. CV 15-00652-AB (Ex)

**DECLARATION OF SALVATORE BADALA IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD AGAINST DEFENDANT NAPOLI BERN RIPKA & ASSOCIATES, LLP; EXHIBITS**

[*Filed concurrently with Motion to Vacate Arbitration Award*]

Date: October 19, 2018
Time: 10:00 a.m.
Crtrm: 7B
Judge: Hon. André Birotte, Jr.

/ / /

/ / /

/ / /

**DECLARATION OF SALVATORE BADALA**

I, Salvatore Badala, declare as follows:

1. I am an attorney with the law firm of Napoli Shkolnik PLLC in New York, New York. I am submitting this declaration in support of the Motion to Vacate Arbitration Award Against Defendant Napoli Bern Ripka & Associates, LLP in connection with the above-captioned action titled *Marc I. Willick v. Napoli Bern Ripka & Associates, LLP, et al.*, Central District of California Case No. CV 15-00652 AB (Ex). Except as otherwise indicated, I have personal knowledge of the facts set forth herein and could competently testify thereto if called to do so.

2. Attached hereto as Exhibit "H" is a true and correct copy of a letter dated December 13, 2017 from Andrew J. Dressel of Napoli Shkolnik PLLC to Evan Shapiro of Skarzynski | Black LLC. I understand that Mr. Shapiro is an attorney for Evanston Insurance Co. Note, the exhibits identified in this Declaration begin with Exhibit "H" to be consecutive with the other exhibits submitted in support of the Motion to Vacate the Arbitration Award.

3. Attached hereto as Exhibit "I" is a true and correct copy of a letter dated January 31, 2018 that I sent to Evan Shapiro of Skarzynski | Black LLC.

4. Attached hereto as Exhibit "J" is a true and correct copy of a letter dated January 31, 2018 that Evan Shapiro of Skarzynski | Black LLC sent to Andrew Dressel of Napoli Shkolnik PLLC with a copy to me and others.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 11th day of September, 2018 at New York, New York.

Salvatore Badala

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

Ropers Majeski Kohn & Bentley
A Professional Corporation
Los Angeles

## INDEX OF EXHIBITS

| Exhibit | Description | Pages |
|---|---|---|
| H | Letter dated December 13, 2017 from Andrew J. Dressel to Evan Shapiro. | 04-07 |
| I | Letter dated January 31, 2018 from Salvatore Badala to Evan Shapiro. | 08-17 |
| J | Letter dated January 31, 2018 from Evan Shapiro to Andrew Dressel. | 18-26 |

4815-9695-2434.1

- 3 -

DECLARATION OF SALVATORE BADALA IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD

# EXHIBIT H



NAPOLI
SHKOLNIK PLLC
ATTORNEYS AT LAW

December 13, 2017

**VIA EMAIL**

Evan Shapiro, Esq.
Skarzynski Black LLC
One Battery Park Plaza, 32nd Floor
New York, New York 10004
eshapiro@skarzynski.com

Re: *Willick v. Napoli Bern, et al.*, LA County Case # BC566742
Insured: Napoli Bern Ripka Shkolnik PLLC
Claimant: Marc I. Willick, Esq.
Policy: Employment Practices and Third Party Discrimination Liability

Dear Evan:

I write in response to your letter dated November 27, 2017 regarding Evanston's decision to decline to pay the costs associated with the accounting ordered by the Arbitrator in the "Tentative Ruling." Respectfully, I disagree with Evanston's position for a variety reason set out in this letter.

As you are aware this case ended up in federal court because insurance counsel decided to remove on behalf of all entities, even though the California court did not have personal jurisdiction over all entities. Insurance counsel then decided to move to bring all the parties into arbitration, even though not all the parties were signatories to the arbitration provision. Both of these were mistakes. Finally, because of a variety of objections by Marc Bern, separate counsel was appointed for the partners and the firm.

Since the outset of these appointments there has been little to no coordination by the carrier with counsel. Counsel has acted in a manner I have not experienced on any case. For example, the firm counsel has refused to communicate with Mr. Napoli on preparing a defense or understanding the facts involved in the case. Further, counsel stipulated to a non-AAA arbitrator, contrary to the terms of the employment agreement with Willick. Then, counsel stipulated to an "accounting" before obtaining Mr. Napoli's consent. Later, when Mr. Napoli pointed out that such a move was unwarranted it was "too late" to avoid the accounting without receiving the wrath of the arbitrator. Lastly, the firm's counsel has now refused to follow Mr. Napoli's direction in litigating the matter and challenging the arbitrator's decision to moving to a non-AAA approved accounting firm.

This last move by counsel along with the other points set out as examples has made it clear that counsel recommended and retained by the carrier have the carrier's interests in mind, not their clients. *See, e.g., Janopaul & Block Cos., LLC v. Superior Court*, 200 Cal. App. 4th 1239, 1251 (2011) (finding questions over whether insurance counsel had diligently represented insured to raise questions surrounding bad faith of insurance company and remanding to trial court for determination on bad faith issue); *Long v. Century Indem. Co.*, 163 Cal. App. 4th 1460, 1470 (2008) (noting that counsel has duty to the insured, not the insurer, where the two parties' interests conflict). Because of the inextricable conflicts between carrier and client the matter has digressed to this point.



Your letter has several inaccuracies. *First*, this is a "tentative" ruling. I believe it would be better for Evanston to wait until the text of the actual order before making a coverage decision. As I make clear below, the actual wording of the order makes a great deal of difference in whether the cost of accounting falls within the definition of "Claim Expenses" under the policy.

*Second*, I disagree with your characterization of the Tentative Ruling and how we got to that Ruling. Mr. Napoli stipulated to the accounting on the advice of insurance counsel. It would now be unfair for the insurance company to turn around and say that it is not covering the accounting claim that insurance counsel talked Mr. Napoli into agreeing to. At the every least it suggests an unethical conflict of interest regarding insurance counsel. Perhaps insurance counsel was seeking to reduce litigation costs in endorsing agreement to the accounting, but "[w]hen counsel is assigned to defend an insured, 'the paramount interest independent counsel represents is that of the insured, not the insurer.'" *Fed. Ins. Co. v. N. Am. Specialty Ins. Co.*, 47 A.D.3d 52, 59 (1st Dep't 2007) (quoting *Feliberty v. Damon*, 72 N.Y.2d 112, 120 (1988)).

*Third*, it is only insurance counsel's incompetence, bordering on malpractice, which led to the Arbitrator assigning the accounting costs to the insured. Messrs. Bern and Napoli have been cooperative in this process, turning over tens of thousands of pages of documents to insurance counsel, who then failed to produce those documents in discovery. When the arbitrator cites to deficiencies in the production, it is insurance counsel's failure to turn over these documents that the arbitrator is citing to. The insured should not be made to bear the cost of insurance counsel's failure.

*Fourth*, Evanston's reading of the both the Tentative Ruling and the Policy is flat out wrong. The accounting does not arise solely out of the breach of contract claims. There are four claims, besides the accounting claim, in the Complaint. Those include a claim for violation of Cal. Bus. & Prof. Code § 17200, which seeks to recover for wrongful employment practices. The proposed accounting is as much related to that statutory claim as it is any other claim. And, of course, that statutory claim for unpaid wages relates to a Wrongful Employment Practice, as that term is defined in the Policy (a "violation of any other employment-related law, rule or regulation, including without limitation any civil rights or fair employment practices law").

*Fifth*, the statement that "the award of costs is due to Willick's causes of action for an accounting and for breach of contract" is wrong for the same reasons. The award of costs is due to attorney misconduct and due, in part, to the claimed violation of Cal. Bus. & Prof. Code § 17200. The Tentative Ruling does not say that costs are being awarded just for the breach of contract claim. In fact, it spells out that discovery failures, which were the result of insurance counsel's failures, are one of the main reasons the insured is being asked to bear the costs of the accounting.

*Sixth*, the cost of the accounting is clearly a Claim Expense, as that term is defined in the policy. The claim under the Cal. Bus. & Prof. Code § 17200 is a covered claim, and the accounting relates to that claim. Moreover, it is simply untrue that accounting costs are "amounts [insured] are required to pay on account of, and pursuant to, their contractual obligations[.]" Nothing in the contract states that insureds are required to pay for an accounting. The insured is only required to pay for an accounting because Willick brought claims against the insured, including statutory employment practices claims, and because the arbitrator ordered the insured to do so, largely due to the incompetence of insurance counsel. A Claim Expense is a "reasonable and necessary fee . . .

NAPOLILAW.COM
360 LEXINGTON AVENUE, 11TH FLOOR, NEW YORK, NEW YORK 10017 (212) 397-1000



incurred . . . in the defense or appeal of that portion of any Claim for which coverage is afforded under this policy . . . ." Nothing could be more necessary than paying a cost ordered by the arbitrator, and covered claims are clearly being pursued in this action; that is after all, why insurance counsel has been part of this process.

I hope that having read this letter, and considering the contractual language, case law, and facts outlined herein, you and Evanston will reevaluate your position, provide a complete defense to all claims, and pay for all Claim Expenses, including the accounting.

Regards,

*/s Andrew J. Dressel*

NAPOLILAW.COM

360 LEXINGTON AVENUE, 11TH FLOOR, NEW YORK, NEW YORK 10017 | (212) 397-1000

# EXHIBIT I



NAPOLI
SHKOLNIK PLLC
ATTORNEYS AT LAW

January 31, 2018

**VIA EMAIL**

Evan Shapiro, Esq.
Skarzynski Black LLC
One Battery Park Plaza, 32nd Floor
New York, New York 10004
eshapiro@skarzynski.com

Re: *Willick v. Napoli Bern, et al.*, LA County Case # BC566742
Insured: Napoli Bern Ripka Shkolnik PLLC
Claimant: Marc I. Willick, Esq.
Policy: Employment Practices and Third Party Discrimination Liability

Dear Evan:

I write in furtherance of Andrew Dressel's December 13, 2017 letter to you regarding Evanston's decision to decline to pay the costs associated with the accounting ordered by the Arbitrator in the "Tentative Ruling."

On January 27, 2018, Judge Stone entered an Order stating that "the ***Accounting was granted in part in response to Claimant's contention that the Firm violated an employment-related law, rule or regulation***." (Interim Award Re Accounting p. 6, attached as Exhibit 1.) (emphasis added). Therefore, the cost of the Accounting is clearly a Claim Expense, as that term is defined in the above-referenced policy.

In light of the January 27 Order, I demand that Evanston pay Ernst & Young for all associated Accounting costs immediately.

Your response is needed before Tuesday, February 6 as we are required to report Evanston's response to Judge Stone on that date.

Regards,
*/s Salvatore C. Badala*

Exhibit 1

EXHIBIT I Page 10

JAMES GOLDMAN (State Bar No. 57127)
jgoldman@millerbarondess.com
KELLY E. HALFORD (State Bar No. 312251)
khalford@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Plaintiff
MARC I. WILLICK

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**ALTERNATIVE DISPUTE RESOLUTION SERVICES, INC.**

MARC I. WILLICK, an individual,

Plaintiff,

v.

NAPOLI BERN RIPKA & ASSOCIATES, LLP, a purported limited liability partnership; NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES, LLP, a purported limited liability partnership; NAPOLI BERN RIPKA SHKOLNIK, LLP, a purported limited liability partnership; NAPOLI BERN RIPKA, LLP, a purported limited liability partnership; NAPOLI KAISER BERN, LLP, a purported limited liability partnership; MARC J. BERN, an individual; PAUL J. NAPOLI, an individual; and DOES 1 through 50,

Defendants.

**ADRS CASE NO. 15-6722-RAS**
Hon. Richard A. Stone

**INTERIM AWARD RE ACCOUNTING**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

**Interim Award**

This Interim Award pertains to Plaintiff Marc Willick's ("Willick") First Cause of Action for an Accounting against Respondent Napoli Bern Ripka & Associates LLP. The Arbitrator is not, at this time, deciding whether Claimant is entitled to an accounting or other relief from any or all Respondents other than Napoli Bern Ripka & Associates, LLP. All issues not expressly decided in this Interim Award are reserved. The scope of the Accounting is outlined in section II of this Interim Ruling.

**I. PLAINTIFF/CLAIMANT IS ENTITLED TO AN ACCOUNTING**

As a result of hearings in this matter on October 5 and 6, and November 5 and 11, 2017, and the Arbitrator's consideration of the evidence and briefs submitted by the parties and argument of counsel, and counsels' representations at the hearing on November 11, 2017 that they had no additional evidence or argument for the Arbitrator to consider, the Arbitrator rules in Willick's favor on Willick's first cause of action and decides that he is entitled to an accounting. The issues of the scope of the accounting, which party should bear the costs of the accounting, and who should conduct the accounting are addressed below. The accounting shall include, but not necessarily be limited to, the following information for each case referred by Willick's Referral Sources, which sources are listed in Schedule C to the May 2011 employment agreement:

1. Case name (all plaintiffs and all defendants)
2. Case number
3. Date of filing
4. Court in which case was filed
5. Type of case (asbestos, mesothelioma, wrongful death, etc.)
6. Names of dismissed defendants (if dismissed other than pursuant to settlement) and date of dismissal
7. Identity of any Referral Source
8. For each settlement:
    a. Name of settling defendant
    b. Date of settlement

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

c. Settlement amount

d. Date of receipt of settlement amount

e. Gross fees

f. Amount paid to client

g. Amount paid to any referral source

9. For each judgment against a defendant

a. Name of defendant against whom judgment entered

b. Date on which judgment entered

c. Amount of judgment

d. Date on which judgment was paid

e. Gross fees

f. Amount paid to client

g. Amount paid to any referral source

10. Identify and quantify all costs incurred to date, including referral fees (include name of recipient), but not including overhead, administrative expenses, rent, employee compensation, or other indirect costs.

## II. <u>SCOPE OF THE ACCOUNTING</u>

The accounting must identify all cases referred by Willick or Willick's Referral Sources to Defendant Napoli Bern Ripka & Associates, LLP or any law firm with which Paul Napoli or Marc Bern have been affiliated, and quantify the fees received on such cases. The accounting must also identify all cases for which Willick performed work as local counsel between March 7, 2011 and May 20, 2011, along with all Assigned Cases that Willick worked on while employed by the Firm, and include the information identified in Section I.

## III. <u>CONSTRUCTION OF THE SUBJECT CONTRACTS</u>

The Arbitrator construes the March 7, 2011 Co-Counsel Agreement for California Personal Injury Claims (the "March Contract") and the May 20, 2011 Employment Agreement (the "May Contract") as follows:

**A. The March Contract**

Pursuant to the terms of the March Contract, Willick is entitled to 10% of the fees received for cases covered by the March Contract, i.e., cases for which Willick acted as local counsel for Defendants on asbestos related claims. The Accounting will include a determination of the outstanding fee obligations owed to Willick, and thus it must include any fees received on asbestos related cases in which Willick acted as local counsel from March 7, 2011 through May 20, 2011.

**B. The May Contract**

**1. Attorney Cases that Resolved During Willick's Tenure**

Willick is entitled to compensation for all Attorney Cases[1] that resolved during his tenure on the sliding scale outlined in Section 2.4(i)(a)-(c) of the May Contract. The accounting must encompass all Attorney cases accepted after May 20, 2011 and resolved during Willick's employment.

**2. Attorney Cases that Resolved After Willick's Tenure**

Section 2.4 provides that Willick is entitled to compensation for cases accepted from him or his Referral Sources. Through the operation of Sections 3.1 and 3.5 of the May Contract, this right to compensation survives the termination of the May Contract.

Therefore, the Accounting must encompass all of the cases referred during the term of the May Contract by him or his Referral Sources, but resolved after the termination of the May Contract.

**3. Cases Referred by Willick's Referral Sources After the Termination of the May Contract**

Section 2.4(ii) survives the termination of the May Contract through the operation of Sections 3.1 and 3.5. Section 2.4(ii) specifically provides that the parties' referral sources during the term of the Contract will remain "their own and shall be maintained as their own by the respective parties in the event the parties decide to terminate this agreement for any reason." Also,

[1] Attorney cases are those accepted by Defendants from Willick or his Referral Sources (as defined in Schedule C to the May Contract).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

it provides that damages for the breach of that provision shall be measured in accordance with the formula set forth in Section 3.5.

Thus, the Accounting must encompass all cases accepted from Willick's Referral Sources after the termination of the May Contract, and damages will be determined according to the provisions of Section 3.5(i)-(iv).

**4. Assigned Cases**

Willick is entitled to a percentage of fees received on any Assigned Cases – i.e., cases assigned to Willick for purposes of handling out of Defendant Napoli Bern Ripka & Associates, LLP's Los Angeles Office – while the May Contract was in effect pursuant to Section 2.6 and Schedule A to the extent such fees exceeded his monthly draw of $15,000.00 under Section 2.3. Willick is not entitled to any additional bonus under Section 2.6, as that appears to be discretionary.

Therefore, the Accounting must encompass all Assigned cases that resolved during the time the May Contract was in effect and determine the fees to which Willick is entitled based on Section 2.6.

## IV. COSTS OF THE ACCOUNTING

The costs of the accounting are to be borne entirely by Defendant Napoli Bern Ripka & Associates, LLP because Willick is a prevailing party and the equities are such that Willick should not bear this burden, as explained below. This ruling is without prejudice to a possible ruling that other Defendants will be responsible for the costs of the accounting if Napoli Bern Ripka & Associates, LLP does not pay for the costs.

Willick is a prevailing party on the First Cause of Action for an Accounting because an accounting was granted. The accounting was granted, in part, because it is clear, based on the evidence submitted by Mary Keyes, one of Willick's referral sources, that Willick may be entitled to substantial compensation.

Additionally, the equities weigh against placing this burden on Willick. First, Defendant Napoli Bern Ripka & Associates, LLP breached its obligations under the May Contract to pay Willick for cases on which he worked. Second, Defendant Napoli Bern Ripka & Associates, LLP

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

breached its obligation under the May Contract to pay Willick the portion of fees they received on cases accepted from his Referral Sources. Third, Defendant Napoli Bern Ripka & Associates, LLP have never provided Willick with an accounting even though it promised him that it would do so. Fourth, Defendant Napoli Bern Ripka & Associates, LLP breached its discovery obligations and prevented Willick from obtaining the documents and information necessary to perform an accounting on his own. Fifth, Defendant Napoli Bern Ripka & Associates, LLP failed to fulfil its promises during discovery to Willick's detriment. And sixth, material information provided during discovery relating to cases referred by Willick's referral sources proved to be false. Finally, the Accounting was granted in part in response to Claimant's contention that the Firm violated an employment-related law, rule or regulation.

For these reasons, the costs of the Accounting shall be solely borne by Defendant Napoli Bern Ripka & Associates, LLP without prejudice.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

## V. THE ACCOUNTANT

The Arbitrator appoints Bjorn L. Malmlund of Ernst & Young LLP (the "Accountant") to conduct the accounting. Compensation shall be at the rates provided in the Rate Card submitted by Defendant Napoli's counsel via e-mail on October 20, 2017. If Mr. Malmlund is unable or unwilling to serve as the Accountant, the Accountant shall be David Nolte of Fulcrum Financial.

## VI. DEFENDANTS ARE ORDERED TO COOPERATE WITH THE ACCOUNTANT

The Arbitrator hereby orders Napoli Bern Ripka & Associates, LLP and the individual Defendants Mr. Napoli and Mr. Bern (hereinafter Defendants), to cooperate with the Accountant. Cooperation includes, but is not necessarily limited to the following:

a. Defendants shall make themselves reasonably available to answer any questions that the Accountant may have, and promptly provide the answers to such questions; if Defendants do not readily have answers to any such questions, they shall make a reasonable effort to obtain the information necessary to provide the answers;

b. Defendants shall promptly provide the Accountant with access to books and records, accounting information, or any other documentation that the Accountant may request pursuant to the scope of this Interim Award to the extent that the documentation is within

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

Defendants' custody or control;

c. Defendants Napoli and Bern shall direct the employees at any law firm to which they are affiliated, including, but not limited to, their respective law firms to cooperate with the Accountant;

d. To the extent that documents or information requested by the Accountant is within the custody or control of a third party, Defendants shall promptly provide authorization to such third party to release the documents or information to the Accountant.

**VII. OTHER MATTERS**

Except insofar as the Accountant's costs and fees are concerned (which are addressed above), the Court reserves jurisdiction to identify a particular party or parties as the prevailing party or parties, and to award costs of suit, including the Arbitrator's fees, to such party or parties.

There will be a hearing in this matter on January 27, 2018 at 9:00 a.m. at which time, the following issues will be addressed: (a) any outstanding discovery issues that the parties have been unable to resolve as a result of a "meet and confer" process; (b) any needs that the Accountant may have and any other issues relating to the Accounting; and (c) a schedule for resolving the remaining claims in this matter.

**IT IS SO ORDERED.**

DATED: January 27, 2018

THE HONORABLE RICHARD A. STONE (Ret.),
Arbitrator

EXHIBIT J

Skarzynski | Black

Skarzynski Black LLC
One Battery Park Plaza, 32nd Floor
New York, New York 10004
P 212.820.7700 | F 212.820.7740
skarzynski.com

**Evan Shapiro**
Direct Line: 212.820.7712
eshapiro@skarzynski.com

January 31, 2018

Via E-Mail
Andrew Dressel, Esq.
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
ADressel@napolilaw.com

Re: *Willick v. Napoli Bern, et al.*

| | |
|---|---|
| Insurer: | Evanston Insurance Co. |
| Policy: | ML813748, For Profit Management Liability Policy – Employment Practices and Third Party Discrimination Liability |
| Policy Period: | June 1, 2014 to June 1, 2015 |
| Markel File: | ML273951 |
| Our File: | 20727 |

Dear Andrew:

This letter is in response to your letter dated December 13, 2017, which in turn is a response to our letter dated November 27, 2017, regarding Evanston's conclusion that coverage is not available under the above-referenced Policy for the costs of the accounting as now ordered pursuant to the Interim Award re Accounting dated January 27, 2018 (the "Accounting Award") by the Arbitrator in the above-referenced action.[1] We are also in receipt of and by this letter respond to, the letter from Sal Badala dated January 31, 2018. After full consideration of your arguments and currently available information, including developments in the arbitration leading to the Accounting Award, Evanston must reaffirm

[1] This letter is subject to, and incorporates by reference, all prior correspondence by this firm and any other representative of Evanston regarding coverage for this matter. Capitalized terms not defined herein have the meaning ascribed to them in our November 27 Letter. Our failure to specifically address herein any coverage term, condition, limitation or exclusion that has previously been noted, is not intended to be, and shall not be deemed to be, a waiver of such matter. Similarly, Evanston's defense and investigation of this matter is ongoing and Evanston continues to reserve the right to raise additional coverage defenses that may appear relevant as the matter develops and further information is received.

its conclusion that there is no coverage under the Policy for the costs to be incurred in connection with the accounting.

As an initial matter, with respect to your repeated accusations of misconduct by defense counsel, we do not believe that the record supports your summary of the events. Rather, for example, we understand that at least Paul Napoli was directly involved in the decision to remove the suit to federal court and to compel arbitration on behalf of all Defendants. Indeed, the Order granting the motion to compel arbitration notes that Willick opposed the referral on the grounds that not all law firms were parties to the contracts with the arbitration provision, but the Court concluded that the law permitted all defendants to participate in the arbitration. You also make several inherently contradictory assertions. For example, you state that defense counsel stipulated to an accounting without Mr. Napoli's consent and also that Mr. Napoli agreed to the accounting on advice of counsel. As another example, at one point you assert that there has not been coordination by the carrier with counsel, while at another point you suggest that counsel is acting to protect only the carrier's interest rather than the interests of the Insureds, their client. We also understand that defense counsel worked diligently to comply with discovery.

Additionally, while we do not think it is necessary or appropriate to undertake an in-depth review of the events at this time, we note that, despite repeated requests by us, you have not provided any evidence to support your assertion that Paul Napoli or anyone on his behalf sent repeated emails to Yee & Belilove that were never answered. You also ignore the fact that Mr. Napoli had his own separate defense counsel, Todd Croutch of Fraser Watson Croutch, who we understand was in regular communication with Mr. Napoli, was responsive to Mr. Napoli's requests, and communicated with Yee & Belilove on Mr. Napoli's behalf. Further, your accusations of misconduct by counsel are a matter to be addressed directly with counsel rather than with Evanston. Regardless, at Mr. Napoli's request, Evanston has agreed to replace Yee & Belilove with counsel agreed to by Mr. Napoli and Mr. Bern on behalf of the Firms. We understand that the new counsel is conferring with Mr. Napoli and Mr. Bern with respect to strategy going forward.

The following responds to your additional arguments in the order presented in your letter as well as the conclusory assertion in Mr. Badala's letter.

First, you asked that Evanston wait for the issuance of the "actual" order rather than the "tentative" rulings by the Arbitrator. Evanston has done so, and has now considered the "actual" order, as signed by the Arbitrator on January 27, 2018, after revisions requested by Mr. Napoli. While the Accounting Award is worded somewhat differently than the tentative rulings addressed in our prior letter, Evanston has again

determined that there is no coverage under the Policy for the costs of the accounting as discussed below.

Your arguments numbered "second", "third", and "fifth" include a number of assertions that boil down to allegations of errors or other misconduct by the independent lawyers retained as defense counsel pursuant to the Policy. While we agree with the general legal point in your letter that lawyers retained as defense counsel for an Insured are obligated to represent the interests of the Insured, as supported by the cases you cite in your letter, as noted above, we do not have any basis to conclude that the defense attorneys here are not working diligently to represent the Insureds' interests. In any event, "insurance companies are not liable for the potential missteps of retained counsel." *Ghiglione v. Discover Prop. & Cas. Co.*, 2007 WL 963250, at *4 (N.D. Cal. Mar. 29, 2007) (citing *Merritt v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 880-81 (1973)). Indeed, "the carrier may rely upon trial counsel to conduct the litigation, and the carrier does not become liable for trial counsel's legal malpractice." *Kauffman v. California State Auto. Ass'n Interinsurance Bureau*, 2009 WL 4049153, at *6 (Cal. Ct. App. Nov. 24, 2009) (quotation omitted). *See also Tokio Marine and Fire Ins. Co., Ltd. v. Grodin*, 2006 WL 3054321, at *5 (S.D.N.Y. Oct. 27, 2006) ("[u]nder New York law, insurers are not vicariously liable for the malpractice of attorneys they retain to defend their insureds when the lawyers are independent contractors."); *Elm Ins. Co. v. GEICO Direct*, 23 A.D.3d 219, 220 (1st Dep't 2005) (insurer not answerable for acts of appointed defense counsel). None of the case cited in your December 13 Letter are contrary and they are otherwise factually inapposite. Therefore, even if mistakes were made by the Insureds' defense counsel, which Evanston does not have any reason to believe is the case, this would be a matter between the Insureds and the involved attorneys; Evanston has no liability for such mistakes.

Your "fourth" and "fifth" arguments are different ways of saying that Evanston misread the tentative ruling regarding the accounting and the scope of the EPL coverage under the Policy because the accounting does not arise solely out of the cause of action for breach of contract. Rather, you argue, the accounting is somehow "related to" the cause of action for violation of Cal. Bus. & Prof. Code § 17200, which you assert is a "statutory claim for unpaid wages" that "relates to a Wrongful Employment Practice, as that term is defined in the Policy" insofar as it includes a "violation of any other employment-related law, rule or regulation...." This argument is not supported by Mr. Willick's Complaint insofar as the cause of action for an accounting in Willick's Complaint is not based upon and does not mention any violation of § 17200. It also is not supported by the circumstances of the Accounting Award itself, including the motion practice leading up to it, and, in any event, this does not change Evanston's conclusions regarding lack of coverage for the cost of the accounting for the following reasons.

As relevant to your argument, we note that like the tentative rulings previously considered by Evanston, the now "final" signed Accounting Award specifies that:

- It is entered as an award in Willick's favor on his first cause of action for an accounting and he is therefore a "prevailing party" on this first cause of action (pp. 2, 5);

- The purpose of the accounting is to determine compensation owed to Willick based on fee sharing agreements concerning fees earned on certain cases pursuant to the terms of the "May Contract" and the "March Contract" as outlined in the Accounting Award (pp. 3-5);

- The costs of the accounting are to be borne entirely by NBR&A because Willick is a prevailing party on his cause of action for an accounting and because the equities weigh against placing the cost of the accounting on Willick. The equitable factors listed in the Accounting Award include that NBR&A breached contractual obligations to pay Willick pursuant to the May Contract[2]; that NBR&A has not provided Willick with an accounting although it promised him that it would do so; and that there were problems with NBR&A's conduct in discovery (pp. 5-6).

The Accounting Award also now includes the following new sentence (p. 6):

> Finally, the Accounting was granted in part in response to Claimant's contention that the Firm violated an employment-related law, rule or regulation.

With respect to this conclusory sentence, we note that we understand that it is the result of Mr. Napoli's request. Specifically, we have been advised that, during a hearing on December 16, 2017, Mr. Napoli's defense counsel (Todd Croutch), at Mr. Napoli's instruction, requested that the Arbitrator include in the award a statement that "[t]he accounting was granted in response to plaintiff's allegation that the firm violated an employment-related law, rule or regulation." The Arbitrator then issued a signed award on January 11, 2018, which did not include the requested statement. Mr. Croutch reiterated the request in an email to the Arbitrator dated January 15, 2018 and a further hearing was held on January 27, 2018. After the January 27 hearing, the Arbitrator revised

[2] In discussing the equities, the Accounting Award specifically finds that NBR&A breached payment obligations under the May Contract. Nonetheless, in a separate section, the Accounting Award states that the accounting will also "include a determination of the outstanding fee obligations owed to Willick" under the March Contract. *Compare* p. 3 *with* p. 5. Thus, it appears that the Accounting Award requires that the accounting address amounts owed by NBR&A under both the March Contract and the May Contract.

his previously signed award and issued the January 27 Accounting Award including the sentence quoted above, a modified version of the sentence requested by Mr. Napoli. Other than this, we have not received any information, such as transcripts of the December 16, 2017 or January 27, 2018 hearings, regarding the reason for and decision to include the wording in the Accounting Award.

Other than the sentence added pursuant to Mr. Napoli's request, the Accounting Award (like the tentative rulings) makes no express mention whatsoever of § 17200 or of Willick's cause of action under that statute. Despite this sentence, there is no suggestion that the Accounting Award is the result of a finding that NBR&A or any other defendant committed any acts that constitute a violation of § 17200. Rather, the Accounting Award is solely and expressly an award to Willick as a prevailing party on his cause of action for an accounting. To the extent that the Accounting Award includes a finding that NBR&A has breached its obligations to account for and pay amounts owed to Willick pursuant to the March and May Contracts, the accounting is part and parcel of NBR&A's obligations under the Subject Contracts and the cost of performing the accounting and paying amounts due pursuant to the Subject Contracts is not Loss the Insured is "legally obligated to pay on account of" a Claim. *See, e.g., HealthNet Inc. v. RLI Ins. Co.*, 206 Cal. App. 4th 232, 252-54 (2012) (concluding that "[p]erformance of a contractual obligation ... is a debt the [insured] voluntarily accepted. It is not a loss resulting from a wrongful act within the meaning of the policy." (citations omitted)). *See also* EPL Coverage Part, Exclusions III.E. In addition, regardless of whether or not the contracts in issue expressly state that NBR&A is required to pay for an accounting, the Accounting Award concludes that NBR&A agreed to, but did not provide the accounting.[3] (p. 5).

Further, even if we assume you are correct that Willick's § 17200 cause of action can be read as a statutory claim for unpaid wages and the award is due in some part to such allegations, this would not bring the Accounting Award within coverage. We remind you that the Policy includes an Endorsement captioned "FLSA Wage and Hour Exclusion," which expressly excludes from coverage all Loss (defined to include Claim Expenses) based upon, arising out of, or in any way involving, violations of any law concerning wage and hour practices. Specifically, this Endorsement provides that the General Terms and Conditions of the Policy shall include as Section XVIII - Exclusions, the following (underscoring added):

---

[3] It is not clear whether the Arbitrator is referring to a pre-litigation agreement or offers made after the law suit was commenced. With respect to the latter, Evanston further reserves its rights to deny coverage for violation of the Policy's Defense, Settlement and Cooperation Clause, which provides: "The Insureds agree not to settle or offer to settle any Claim, incur any Claim Expenses or otherwise assume any contractual obligation … without the Insurer's written consent, which shall not be unreasonably withheld." (GTC § IV.A.3.a).

> The Insurer shall not be liable under any purchased Coverage Part to pay any **Loss** on account of, and shall not be obligated to defend, any **Claim** made against any **Insured**:
>
> based upon, arising out of, or in any way involving any **Wrongful Act** or **Interrelated Wrongful Acts** that violate(s) or is(are) alleged to violate the Fair Labor Standards Act, any amendment thereto or any similar or related federal or state statue law, rule, ordinance or regulation or any other law concerning wage and hour practices including but not limited to any **Claim** for off-the-clock work, failure to provide rest or meal periods, failure to reimburse expenses, improper classification of employees as exempt or non-exempt, failure to timely pay wages, conversions, unjust enrichment, or unfair business practices whether or not associated with any **Claim** for any actual or alleged **Wrongful Employment Practice**;
>
> but this exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant by the **Insured** on account of the claimant's exercise of rights pursuant to the Fair Labor Standards Act, any amendment thereto or any similar or related federal or state statute, law, rule, ordinance or regulation or for any other actual or alleged violation of any whistleblower statute or law.

As plain on the face of this Endorsement, to the extent that, as you assert, the Accounting Award and shifting of costs relates to a statutory claim for unpaid wages, then it is excluded from coverage. This is not changed by the wording added to the Accounting Award at Mr. Napoli's request. For avoidance of doubt, we also note that it is our understanding based on all available information that Willick is not alleging any retaliatory treatment of him by an Insured within the exception of the last paragraph of § XVIII quoted above.

Your "sixth" argument (and in conclusory fashion, Mr. Badala's January 31 letter) asserts that the cost of the accounting is a "Claim Expense" as defined by the Policy because the cause of action under § 17200 is a statutory claim for unpaid wages and "the accounting relates to that claim." As noted above, if and to the extent that the § 17200 cause of action is a statutory claim for unpaid wages, it is excluded from coverage under the Policy. Moreover, on its face, the Policy does not provide coverage for "all costs" that in any way "relate" to a Claim as you assert. Rather, the Policy expressly defines covered Claim Expenses to mean amounts "incurred ... in the defense or appeal of that portion of any Claim for which coverage is afforded under this Policy." Here, for the reasons discussed above, the cost of the accounting is not in connection with a Claim for which coverage is afforded under the Policy.

The cost of the accounting is further independently barred from the EPL Coverage Part pursuant to Exclusion III.I.1., which excludes from coverage any Loss "if such Loss constitutes: ... any amount incurred by the Insureds to comply with any injunctive or other non-monetary relief." In this regard, as you know, a cause of action for an accounting is an independent equitable cause of action based on a plaintiffs' legal right to determine the amount of money, if any, that is due such plaintiff. *See, e.g., Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 180 (2009) ("[T]he purpose of the accounting is, in part, to discover what, if any, sums are owed to the plaintiff, and an accounting may be used as a discovery device." (citations omitted)); *Prakashpalan v. Engstrom*, 223 Cal. App. 4th 1105, 1136-37 (2014) ("An accounting is an equitable proceeding which is proper where there is an unliquidated and unascertained amount owing that cannot be determined without an examination of the debits and credits on the books to determine what is due and owing." (citations omitted)). This is also supported by the Arbitrator's analysis in this case in his "Ruling Re Defendants Motion to Dismiss Plaintiff's Accounting Claim" dated October 5, 2017. In sum, on its face, the Accounting Award is an award in Willick's favor, as a prevailing party on his cause of action for an accounting, and grants to Willick the accounting as equitable, injunctive, non-monetary relief. Thus, the costs of the accounting that will be incurred to comply with the Accounting Award are clearly barred from coverage pursuant to Exclusion III.I.1.

**Conclusion**

For all of the foregoing reasons, and for the additional reasons set forth in our prior correspondence on this matter, Evanston has concluded that that the costs associated with the accounting, as imposed on NBR&A pursuant to the Accounting Award as signed on January 27, 2018, are not covered Loss under the Policy. For avoidance of doubt, we note that while Evanston will continue to provide a full defense to Willick's action subject to its ongoing reservation of all rights, remedies and defenses to coverage under the Policy and applicable law or in equity, all fees and costs incurred in order to comply with the Accounting Award are excluded from coverage.

Should you believe that Evanston has misconstrued the circumstances of this matter, or should you have any other information that you believe may impact Evanston's coverage determination, please promptly direct such information to the attention of the undersigned so that Evanston can address such circumstances or information. We remind you that the Insureds have a continuing duty to cooperate with Evanston pursuant to the cooperation clause of the Policy (GTC § IV. B.) and the general duties owed by an Insured to its Insurer.

While we hope that you would contact us if you have any questions or concerns regarding the above, if you believe that Evanston has wrongfully denied or rejected a

Andrew Dressel, Esq.
Markel File No. ML273951
January 31, 2018
Page 8

claim in whole or in part, you may ask the California Department of Insurance (the "Department") to review this matter.  The Department may be contacted at:  Claims Services Bureau, 11th Floor, 300 S. Spring St., Los Angeles, CA  90013, 1-800-927-4357, www.insurance.ca.gov.

Very truly yours,

Evan Shapiro

cc:   Shekar Adiga, Esq. (sadiga@MarkelCorp.com)
      Salvatore Badala, Esq. (sbadala@napolilaw.com)
      Cliff Robert, Esq. (crobert@robertlaw.com)
      Brian Brick, Esq. (bbrick@bernllp.com)
      Heather Fox (hfox@arcxs.com)
      David Sterling (Dsterling@sterlingrisk.com)
      Joshua Weisberg (JWeisberg@sterlingrisk.com)
      George Mustes (gmustes@skarzynski.com)

EXHIBIT J                                          Page 26